NATIONWIDE INSURANCE ENTER-
PRISE and Nationwide Mutual
Insurance Co., Appellees,

v.

Anastasis MOUSTAKIDIS, Appellant.

Superior Court of Pennsylvania.

Argued March 26, 2003.

Filed Aug. 18, 2003.

Robert J. Baccari, Feasterville, for appellant.

John F. Lewis, Norristown, for appellee.

BEFORE: JOYCE, ORIE MELVIN and BECK, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Anastasis Moustakidis, appeals from the July 10, 2002 Order granting Appellees', Nationwide Insurance Enterprise and Nationwide Mutual Insurance Company (Nationwide's), petition to enforce an alleged settlement agreement relating to uninsured motorist benefits. We affirm.

¶ 2 The trial court aptly summarized the facts and procedural background as follows:

On May 2, 1996, Appellant was involved in a motor vehicle accident with an uninsured motorist. His motor vehicle was Insured by Appellee[s], under a Nationwide Century II Auto Policy (hereinafter 'Policy'). Thereafter, Appellant filed a claim with Appellee[s] for uninsured motorist [ (UM) ] benefits. On December 15, 1996, after negotiations, Appellant and Appellee[s] settled this claim for $3,127.00. On that date, Appellant received a check in the aforementioned amount from Appellee[s], in exchange for which he signed a release. The terms of the release provide that he

...hereby releases, discharges, and for herself/himself ... does forever release and discharge of and from all claims of whatsoever kind and nature prior to and Including the date hereof growing out of the Uninsured Motorist Coverage of an automobile Insurance policy....

Appellant took no action following the signing of the release until approximately 18 months later in March of 1998 when he retained counsel to investigate this matter because he now believed he was entitled to more than the $3,127.00 settlement. Retained counsel, however, apparently took no substantive steps in this case and after waiting another 19 months, Appellant hired present counsel, Robert Baccari, Esquire. Counsel then filed both a civil action and a Petition to Compel Arbitration and for the Appointment of an Arbitrator in May of 2000. Appellee[s] inadvertently filed an answer to the motion to appoint arbitrators under the term and number assigned to the civil action. Therefore, the answer was timely but docketed under the incorrect number. As a result, the assigned judge appointed a neutral

arbitrator. After this error was discovered, the answer was properly docketed and the order appointing an arbitrator was vacated. Appellant then filed Preliminary Objections to Appellee's [sic] answer, but failed to take any further action with regard to praeciping the Preliminary Objections for argument. No activity occurred in this matter until Appellee[s] filed a Petition to Enforce Settlement on February 25, 2002.

Trial Court Opinion, 9/17/02, at 1–2. After a hearing on the petition the trial court determined that it had "jurisdiction over this matter because a claim for damages after a dispute has been settled does not fall within the scope of the Policy's arbitration provision." *Id.* at 5. Additionally, the trial court found the parties entered into a valid settlement and thus granted Nationwide's petition. This appeal followed.

■ ¶ 3 On appeal Appellant presents the following issues:

WHETHER THE TRIAL COURT ERRED IN GRANTING THE PETITION TO ENFORCE SETTLEMENT AND DENYING THE PETITION TO APPOINT ARBITRATORS AND SCHEDULE ARBITRATION WHERE THE PARTIES HAD AGREED TO ARBITRATION AND THE DISPUTE FELL WITHIN THE SCOPE OF THE ARBITRATION CLAUSE?

WHETHER THE TRIAL COURT ERRED IN RULING ON THE MERITS OF THE DISPUTE REGARDING UNINSURED MOTORIST BENEFITS SUBJECT TO ARBITRATION BY DECIDING THE PETITION TO ENFORCE SETTLEMENT WHILE A PETITION TO APPOINT ARBITRATORS AND SCHEDULE ARBITRATION WAS PENDING IN SAME COURT?

WHETHER THE TRIAL COURT ERRED IN MAKING A PRELIMINARY DETERMINATION OF WHETHER THE RELEASE WAS VALID OR PROCURED BY FRAUD BEFORE COMPELLING [SIC] ARBITRATION?

WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THE LANGUAGE OF THE ARBITRATION CLAUSE IN QUESTION DID NOT ALLOW AFFIRMATIVE DEFENSE OF WHETHER THE RELEASE WAS VALID OR PROCURED BY FRAUD TO BE DECIDED BY ARBITRATION?

Appellant's brief, at 5.

When reviewing a trial court's decision to enforce a settlement agreement, our scope of review is plenary as to questions of law, and we are free to draw our own Inferences and reach our own conclusions from the facts as found by the court. However, we are only bound by the trial court's findings of fact which are supported by competent evidence. The prevailing party is entitled to have the evidence viewed in the light most favorable to its position. Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous.

*Bennett v. Juzelenos,* 791 A.2d 403, 406 (Pa.Super.2002) (citations omitted). Furthermore, a trial court's "conclusion as to whether the parties have agreed to arbitrate is reviewable by this Court." *Midomo Co. v. Presbyterian Hous. Dev. Co.,* 739 A.2d 180, 187 (Pa.Super.1999) (quoting *Smith v. Cumberland Group, Ltd.,* 455 Pa.Super. 276, 687 A.2d 1167, 1171 (1997)). "Our review is plenary, as it is with any review of questions of law." *Id. See also Shadduck v. Christopher J. Kaclik, Inc.,*

713 A.2d 635, 637 (Pa.Super.1998) (stating: "The issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for the court to decide."). "When one party to an agreement seeks to prevent another from proceeding to arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision." *Midomo*, 739 A.2d at 186 (quoting *Smith*, 687 A.2d at 1171). "If a valid arbitration agreement exists between the parties and appellant['s] claim is within the scope of the agreement, the controversy must be submitted to arbitration." *Goldstein v. Depository Trust*, 717 A.2d 1063, 1066 (Pa.Super.1998), *appeal denied*, 558 Pa. 609, 736 A.2d 605 (1999) (quoting *Messa v. State Farm Ins. Co.*, 433 Pa.Super. 594, 641 A.2d 1167, 1170 (1994)). Conversely, if the dispute is not within the scope of the arbitrator's authority, the court can rule on that issue.

¶ 4 Essentially, Appellant's issues boil down to only two: (1) whether the trial court erred in concluding that the parties' dispute did not fall within the scope of the policy's arbitration provision; and, (2) whether the trial court erred in finding that the parties entered into a valid settlement agreement. As to the first issue, there is no question in the present case that Nationwide agreed to arbitrate disputes concerning its obligation to pay a claimant UM benefits. However, they did not agree to arbitrate disputes concerning the validity of settlements they allegedly reached with claimants. The scope of the arbitration provision is determined by the intentions of the parties, which is ascertained by the words used in the policy. The instant arbitration provision by its terms is applicable only if the insurer and the insured "disagree about the right to recover damages or the amount of such damages." Policy at 15 (attached as Ex. "A" to Petition to Enforce Settlement), C.R. at 1. No such disagreement exists in this case. Unlike the cases cited by Appellant, this case does not involve a refusal by Nationwide to pay UM benefits. The substantive dispute here is whether the parties entered into an enforceable settlement agreement. Appellant does not deny receipt of a check for benefits under his UM coverage or that he executed a release therefor and retained the proceeds. Rather, he contends that he was fraudulently induced into settling this matter due to his poor grasp of the English language. After careful review of the record before us, the applicable law and the arguments advanced by the parties, we find that this matter is not a part of the insurance contract and is not arbitrable thereunder.

¶ 5 In this regard the trial court opined:

Unlike the very general language of the arbitration clause in *Brennan* [*v. General Acc. Fire and Life Assurance Corp., Ltd.*, 524 Pa. 542, 574 A.2d 580 (1990) ], however, the [instant] Policy's arbitration clause is triggered only in the event that there is a dispute as to claimant's legal entitlement to recover damages or the amount of damages. Although Appellant argues that the instant 'dispute' is covered by the clause, he fails to cite any facts or caselaw to support the notion that the arbitration clause was intended to encompass a claim regarding a final settlement which a party subsequently decides is not sufficient. We properly took jurisdiction over this matter because a claim for damages after a dispute has been settled does not fall within the scope of the Policy's arbitration provision.

Trial Court Opinion, 9/17/02, at 5. We agree.

¶ 6 Furthermore, our review of the trial court's determination regarding the validity of the settlement agreement finds that it is supported by competent evidence and involves no legal error. "The enforceability of settlement agreements is ordinarily determined by general principles of contract law." *Pulcinello v. Consolidated Rail Corp.*, 784 A.2d 122, 124 (Pa.Super.2001) (citations omitted). "It is hornbook law that in order to form a contract, there must be an offer, an acceptance, and consideration." *Yoder v. Am. Travellers Life Ins. Co.*, 814 A.2d 229, 233 (Pa.Super.2002) (citing *Yarnall v. Almy*, 703 A.2d 535, 538 (Pa.Super.1997)). "[T]he effect of a release must be determined from the ordinary meaning of its language." *Buttermore v. Aliquippa Hospital*, 522 Pa. 325, 328–329, 561 A.2d 733, 735 (1989) (citing *Estate of Bodnar*, 472 Pa. 383, 372 A.2d 746 (1977)).

¶ 7 Pursuant to the release, the payment of $3127.00 constituted full and final settlement and discharge of all the claims of the UM coverage. To avoid the effect of the release Appellant claims that it was procured by fraud or that he failed to read or failed to understand the nature of its contents believing it was only a partial payment for income loss benefits. It was Appellant's "burden to prove that this release was procured by fraud and the evidence in proof thereof had to be clear, precise and indubitable." *Nocito v. Lanuitti*, 402 Pa. 288, 289, 167 A.2d 262, 263 (1961) (citations omitted). The trial court heard testimony on this issue and accepted Nationwide's adjuster's version of events as more credible. Consequently, the trial court determined Appellant failed to establish by clear and convincing evidence that the release was procured by fraud. "[I]t is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgment for that of the fact-finder." *Vattimo v. Eaborn Truck Service, Inc.*, 777 A.2d 1163, 1165 (Pa.Super.2001) (citing *Ludmer v. Nernberg*, 433 Pa.Super. 316, 640 A.2d 939 (1994)). An examination of this record supports the trial court's determination. Accordingly, we conclude the trial court did not err in failing to compel arbitration or in enforcing the settlement, and we affirm on the basis of the trial court's opinion for purposes of further review.

¶ 8 Order affirmed.