J-A25004-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| EDDIE GERVIS AND BARTOLO J. MORENO, | : IN THE SUPERIOR COURT OF<br>:             PENNSYLVANIA<br>: |
|         Appellants | :<br>: |
|       v. | :<br>: |
| BUCKS COUNTY MENTAL HEALTH CLINIC AND CHRISTINE TORRES MATRULLO, | :<br>:<br>:<br>: |
|         Appellees | :  No. 880 EDA 2014 |

Appeal from the Judgment entered March 3, 2014,
Court of Common Pleas, Bucks County,
Civil Division at No. 2008-02415-32-2

BEFORE: DONOHUE, WECHT and PLATT*, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED OCTOBER 21, 2014**

Eddie Gervis ("Gervis") and Bartolo Moreno ("Moreno") (collectively, "Appellants") appeal from the judgment entered in favor of Bucks County Mental Health Clinic ("the Clinic") and Christine Torres Matrullo ("Matrullo") (collectively "Appellees"). For the reasons discussed herein, we affirm.

The trial court summarized the factual history as follows:

> [Gervis] first met [Matrullo] at the Panamerican Mental Health Clinic in Philadelphia. Matrullo was the Clinical Director of the Panamerican Mental Health Clinic, and Gervis worked there as a psychotherapist. They worked together at the Philadelphia location for a year and a half. Sometime around early 2006, both Gervis and Matrullo were transferred to the Panamerican Mental Health Clinic in Bristol, Pennsylvania. Shortly after this transfer, Matrullo called and told Gervis about a new clinic she was starting. This clinic became

---

*Retired Senior Judge assigned to the Superior Court.

known as Bucks County Mental Health Clinic, a nonprofit corporation, and Gervis began working there on March 31, 2006.

Soon after Gervis joined, Matrullo told Gervis that the nonprofit Bucks County Mental Health Clinic was experiencing financial difficulties, and that an investment was needed to help with these difficulties. Gervis testified that Matrullo told him if he invested in the nonprofit … he would receive large profits in the long run. On December 18, 2006, Gervis signed a document titled 'Second Level Letter of Intention, and Agreement to Allow For A Third Investor' (hereinafter, 'Investor's Agreement'). This document stated that Gervis would provide $20,000 [] to the nonprofit Bucks County Mental Health Clinic to 'ease its cash flow needs,' and that he would be placed on the Board of Directors. [Moreno] signed an identical Investor's Agreement, and also invested $20,000 [] in the nonprofit Bucks County Mental Health Clinic.

The nonprofit Bucks County Mental Health Clinic provided psychotherapist services for mental health patients, along with family therapy. In the Investor's Agreement signed by Gervis and Moreno, there were plans of a 'for profit Corporation anticipated to be formed.' Gervis testified that Matrullo led he and Moreno to believe [that] they would make money back from their investments through the for-profit corporation. Gervis and Moreno signed an Operating Agreement in 2011, giving them part ownership of Matrullo's for-profit entity known as Bucks County Mental Health Services, LLC. The Operating Agreement of the for-profit [entity] states, 'The Company desires to engage in the business of brokering of [*sic*] managing and operating a Mental Health Facility and providing mental health services for residents of the Commonwealth of Pennsylvania and the State of New Jersey, particularly, Hunterdon and Mercer Counties.' Gervis and Moreno were listed as each having a 10% interest in the for-profit [entity], along

with one vote each. Neither was listed as having given an initial capital contribution. Gervis testified that no meetings were ever held for the for-profit [entity] and no business was even conducted. Further, Gervis and Moreno claim that Matrullo guaranteed them a return on their $20,000 [] investment in the nonprofit [entity], and that this return never materialized. None of the documents related to either the nonprofit [] or the for-profit [] mention a guarantee of a return on any kind of investment, nor do they mention a specific return on a $20,000 [] investment.

Gervis was employed by the nonprofit [entity] from March 31, 2006 until January 29, 2008. Gervis signed a 'Mental Health Services Contract for Psychotherapist' (hereinafter, 'Employment Agreement') on April 28, 2006. The Employment Agreement read, 'In exchange for the mutual services and promises delineated herein, the Clinical Provider agrees to abide by and honor the following terms: (a) It will pay Contractor at the rate of $35 per hour for services actually provided during the first six months of this contract and $40 per hour thereafter.' Despite the contract language reading 'per hour,' Gervis repeatedly testified that he was paid 'per session,' and at one point referred to the payment measures a 'session hour.' Gervis testified that he never received an increase in his pay. Additionally, Gervis claims that he stopped being paid altogether for some sessions, and would only receive a portion of what he was owed. Gervis resigned from his position on January 29, 20[08].

On March 11, 2008, Gervis and Moreno filed a [c]omplaint against Matrullo and Bucks County Mental Health Clinic, alleging [i]ntentional [m]isrepresentation, [u]njust [e]nrichment, [b]reach of [c]ontract, and a [c]laim under the Unfair Trade Practices and Consumer Protection Law.

On December 19, 2013, the [c]ourt held a one-day non-jury trial.

On February 7, 2014, the [c]ourt entered a verdict in favor of [Appellees] on all claims.

On March 3, 2014, the [c]ourt denied [Appellants'] [post-trial] [m]otion and entered judgment in the matter.

On March 20, 2014, [Appellants] field their [n]otice of [a]ppeal … .

Trial Court Opinion, 5/27/14, at 1-5 (footnotes omitted).

Appellants present one issue for our review: "Was the verdict so against the weight of the evidence such that it constitutes a miscarriage of justice and leads to the conclusion that the [trial court] committed a clear abuse of its discretion in refusing to grant a new trial?" Appellants' Brief at 4.

A new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but, rather, after due consideration of the evidence found credible by the fact-finder, and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion. Our standard of review in denying a motion for a new trial is to decide whether the trial court committed an error of law which controlled the outcome of the case or committed an abuse of discretion.

We stress that if there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm.

- 4 -

***Joseph v. Scranton Times, L.P.***, 89 A.3d 251, 274 (Pa. Super. 2014) (citation omitted).

Appellants argue that the verdicts are against the weight of the evidence as to each of the three claims they raised in their complaint, and they address each claim separately. They begin with their claim for intentional misrepresentation.

> The elements of fraud, or intentional misrepresentation, are (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

***Presbyterian Med. Ctr. v. Budd***, 832 A.2d 1066, 1072 (Pa. Super. 2003). Appellants argue that both Gervis's testimony and the content of the Investor's Agreements establish all of the elements required to succeed on this claim, and therefore that the verdict is against the weight of the evidence. Appellants' Brief at 11. Appellants summarize their argument as follows:

> Matrullo took $20,000 from each [Appellant]. She never placed [Appellants] on any board of directors, never gave them voting rights in any entity, never gave them an equity interest in a for-profit entity and never formed a for-profit entity which carried on any business. [Matrullo] has never offered any explanation and failed to appear for trial.

> [Appellants] proved their intentional misrepresentation case … by clear and convincing evidence. The verdict on [this] claim … was against the weight of that evidence, and the [trial court] abused its discretion when it failed to award [Appellants] a new trial.

*Id.* at 12.

In reaching its conclusion, the trial court found that Appellees followed through with any/all of their obligations as outlined in the Investor's Agreements. In doing so, it expressly rejected Gervis's testimony that Matrullo represented that he and Moreno would receive a return on their investment. Trial Court Opinion, 5/27/14, at 8-9. The record supports the trial court's determination. The Investor's Agreements provide that the $20,000 payments made by each Appellant to the Bucks County Mental Health Clinic were "to ease its cash flow needs" and that it "constitutes an equity investment in the for[-]profit corporation, whose value is 10% of the for profit corporation's stock and ownership of any and all assets deemed owned by said corporation." Exhibit P-1 at 2; Exhibit P-2 at 2. It also provides that Appellants would be on the Boards of Directors of both the Clinic and the to-be-formed for-profit entity. *Id.* at 4; Exhibit P-2 at 4. There is no provision in these Agreements regarding a return of any kind on the $20,000 investment. The for-profit was formed on January 1, 2010, and Appellants were named as members with voting rights and 10% ownership interests therein. Exhibit P-3 at 8, Annex A.

Appellants make much of the fact that the for-profit entity has not carried on any business and that they were never called upon to cast votes for the entity. Appellant's Brief at 9-10. Appellants have established only that they have not discharged any duties in connection with these entities. The fact that they have not been called upon to do so does not negate the trial court's finding that they received what the Investor's Agreements provided they would receive: seats on the Boards of Directors of both entities with voting rights and 10% ownership interests in the for-profit entity. The trial court's determination to deny Appellant's request for a new trial finds support in the record and we conclude that there was neither an error of law nor an abuse of discretion.

Appellants next present their unjust enrichment claim. To prove unjust enrichment, one must establish "the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." ***Roethlein v. Portnoff Law Associates, Ltd.***, 81 A.3d 816, 825 n.8 (Pa. 2013).

Appellants assert that they "conferred a $40,000 benefit upon [Appellees] and it would be inequitable for [Appellees] to retain that money without payment of value." Appellants' Brief at 13. Appellants argue that they were entitled to some return on their investments and that it would be inequitable to conclude otherwise. ***Id.*** at 13-14. However, as discussed

above, the trial court found that, pursuant to the Investor's Agreements, Appellants made the $40,000 cash infusion to the Clinic in order to ease its cash flow needs and that no return on this money was promised or expected. Trial Court Opinion, 5/27/14, at 10. It therefore concluded that Appellants' unjust enrichment claim could not succeed. As set forth above, the record supports trial court's determination that the funds given to the Clinic were for its cash flow needs and that the Agreements did not provide that Appellants would receive a return on these funds. As the trial court's determination is supported by the record, we may not disturb it. **Joseph**, 89 A.3d at 274. This finding, which we may not disturb, supports the trial court's denial as to this claim.

Appellants' final argument involves the breach of contract claim, which was premised on Gervis's employment contract with the Clinic. To succeed on a claim for breach of contract, "a party must establish[] (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." **McCausland v. Wagner**, 78 A.3d 1093, 1101 (Pa. Super. 2013). Gervis alleged that the Clinic breached its contract with him because it failed to pay him in accordance with the terms of the contract. Specifically, he alleged that the Clinic did not increase his rate of pay in October 2006 as it was required to do and that it did not pay him for approximately three months in 2007. The trial court found that there was "no question" as to the existence of a contract between Gervis

and the Clinic, but that Gervis failed to establish a breach of that contract because he did not have evidence of the precise sessions or period of time for which he alleges he is owed compensation. Trial Court Opinion, 5/27/14, at 11, 14. In doing so, the trial court rejected Gervis's testimony as to the period of time for which he had not been paid and that he never received an increase in pay rate, as well as his manner of calculating the alleged amount he is owed. *Id.* at 14. Gervis argues only that the trial court erred in rejecting this evidence as incredible. Appellants' Brief at 14-15. As an appellate court, we are not permitting to disturb the trial court's credibility determinations. *Nationwide Ins. Enter. v. Moustakidis*, 830 A.2d 1288, 1292 (Pa. Super. 2003) ("[I]t is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgment for that of the fact-finder."). Beyond Gervis's testimony, there was no other evidence to support Gervis's claims. As set forth above, on review of a claim that the verdict was against the weight of the evidence, the test we apply is whether "after due consideration of the evidence found credible by the fact-finder, and viewing the evidence in the light most favorable to the verdict winner, … the court could reasonably have reached its conclusion." *Joseph*, 89 A.3d at 274. As the trial court found Gervis' testimony incredible, and there was no other evidence from which the trial court could have determined the period of time

for which Gervis had not been paid or the rate of his pay, we find that the trial court's conclusion is reasonable.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2014