496 A.2d 793

**Florence M. FEE, Appellee,**

v.

**J. Kevin FEE, Appellant.**

**Florence M. FEE, Appellant,**

v.

**J. Kevin FEE, Appellee.**

Superior Court of Pennsylvania.

Argued April 24, 1984.

Filed July 26, 1985.

William R. Hagner, Paoli, for appellant (at No. 3135), for appellee (at No. 3313).

Arthur L. Jenkins, Jr., Norristown, for appellant (at No. 3313), for appellee (at No. 3135).

Before McEWEN, BECK and CERCONE, JJ.

BECK, Judge:

In this appeal from a Chester County child support order, the father asserts that the trial court erred in calculating his support obligation under a shared custody arrangement (1) by premising its order on the Chester County support guidelines; (2) by ignoring monies expended directly on the children and (3) by considering the economic contribution of his live-in companion. The mother cross-appeals by contending that the trial court erred in not affirming the hearing officer's recommendation of $920 per month and instead awarding $875 per month in support for her and the parties' two children. These cross-appeals which are limited to the issue of child support, have been consolidated.

On appeal, a trial court's child support order will not be disturbed unless there is insufficient evidence to sustain it or the court abused its discretion in fashioning the award. *Commonwealth ex rel. Robinson v. Robinson,* 318 Pa.Super. 424, 465 A.2d 27 (1983); *Downie v. Downie,* 314 Pa.Super. 548, 461 A.2d 293 (1983). An abuse of discretion is not " 'merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.' " *Boni v. Boni,* 302 Pa.Super. 102, 109, 448 A.2d 547, 550 (1982) (citation omitted); *Commonwealth ex rel. Darling v. Darling,* 300 Pa.Super. 62, 445 A.2d 1299 (1982). For the reasons hereinafter stated, we conclude that the trial court lacked ade-

quate evidence upon which to predicate its award, and therefore, we vacate the trial court's support order and remand for further proceedings consistent with this opinion.

In many counties, the courts rely on county support guidelines in fashioning support awards. *See, e.g., Shank v. Shank*, 298 Pa.Super. 459, 444 A.2d 1274 (1982). These guidelines are an efficient tool and impose some uniformity on support orders. The Chester County guidelines which are in the form of grids, consider two variables: the number of persons for which support is sought and the individual incomes of the mother and the father. After the court determines the appropriate support amount from the grid, it then adjusts that amount by considering the parents' other direct and indirect financial benefits and the actual, reasonable expenses of the parents and children together with any circumstances that may increase or defray those expenses.

In the case sub judice, the trial court determined the parties' respective net monthly incomes and then consulted Chester County's support guidelines.[1] Although the guideline grids are gauged solely to income and the number of people being supported, the preamble to the guidelines provides flexibility in applying the grids. The preamble declares that the guideline grids are "not intended to deprive the hearing officer of discretion to consider, among other things ...: a) other support obligations of the parties; b) other income in the household; c) age and sex of children; and d) assets of the parties." The preamble also requires that "[i]f a [hearing officer's] recommendation departs from the guideline grids by more than [a] specified deviation, the hearing officer is required to give an explanation." In other words, the primary focus of the guidelines is the parents' individual incomes rather than the parents' overall financial resources available for child support, and there is a strong, albeit rebuttable, presumption in Chester County that the "guidelines show the typical amount of support

---

1. Neither parent has disputed the amount of the other's reported monthly income; hence, there has been no disagreement as to which Chester County guidelines grid was utilized by the trial court.

which a spouse or parent should pay . . . ." Preamble to the Chester County Guidelines.

The present support order reflects the fact that the Chester County trial court conscientiously considered factors outside the guideline grid and adjusted the recommended grid support amount accordingly. However, we are unable to review the trial court's support order without an explanation of the factors considered by the court and the reasons for the adjustments made to the grid support amount. We do not have the benefit of adequate explanations in the record or in the trial court's opinion.

For example, the trial court predicated its support order upon a Chester County guideline grid captioned support for "Wife and Two Children." Since the grid does not allocate support between the spouse and the children, we cannot determine whether the children's needs, apart from the spouse's, are adequately met by the grid's support allotment. *See Downie.* Although the trial court allocated its support award between the children and the mother, the basis for the court's allocation does not appear of record.

Moreover, the evidence adduced by the parties was not geared to provide information to use as a basis for allocation. Although both parents supplied the court with expense statements, they did not separate their own expenses from those of the children. *See Downie.* Additionally, the mother's expense statement included several desired or conjectural, rather than actual, expenses.[2,3] *See Robinson.* Therefore, the trial court was not provided evidence of the actual, reasonable expenses entailed in raising the parties' children.

**2.** We note that the mother's expense statement was also inaccurate to the extent that it listed home mortgage payments which were routinely made by the father.

**3.** The parties' evidence regarding the reasonable expenses involved in raising their children necessarily included monies spent by each parent directly on the children's behalf while the children were in that parent's custody. Thus, contrary to the father's assertion, the parents' direct contributions to the children's welfare constituted one element of the children's reasonable expenses evaluated by the trial court.

■ Furthermore, the guideline grid utilized by the trial court is, as revealed by the grid's caption ("Wife and Two Children") and the preamble to the guidelines,[4] geared to child custody cases where one parent has sole custody. Because child-rearing expenses in a shared custody setting may vary from those in a sole custody setting, *Beck v. Beck*, 86 N.J. 480, 432 A.2d 63 (1981), it cannot be assumed without explanation that the Chester County guideline grid reflects the children's reasonable needs in a shared custody context.[5]

■ In addition to evidence of the children's expenses, a court must have competent evidence of the parents' financial resources[6] and actual, reasonable living expenses so that the court can formulate an equitable child support award. *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984). "Support orders must be fair, not confiscatory, and must be consistent with the parents' and childrens' station in life and customary standard of living." *Robinson*, 318 Pa.Super. at 425–26, 465 A.2d at 28; *Sutliff v. Sutliff*, 339 Pa.Super. 523, 489 A.2d 764 (1985). Both parents bear

4. The preamble to the guidelines contains a section captioned "Divided Custody." However, this section relates strictly to situations where the parties' children are raised separately so that sole custody of some of the children resides in the mother while sole custody of the remaining children resides in the father. There is no reference in the guidelines to shared custody where the parties' children reside alternately with the father and then the mother.

5. Even though duplication of some items may be required in a shared custody context (*e.g.,* children will need a place to sleep at each parent's home so that each parent may have to purchase beds for the children), it will not be necessary to duplicate all items utilized by the children (*e.g.,* the children may wear the same pair of shoes at both parents' homes). Hence, proof of child-raising expenses in shared custody cases is crucial to the court's calculation of fair support obligations. Parents' support obligations in shared custody cases may differ from parents' support obligations in sole custody cases.

6. For child support purposes, a parent's financial resources include far more than earned wages or salary. Financial resources encompass the full nature and extent of each parent's property, earning capacity, and direct and indirect income from whatever source. *See, e.g., Curtis v. Curtis*, 326 Pa.Super. 40, 473 A.2d 597 (1984); *Cross v. Cross*, 310 Pa.Super. 124, 456 A.2d 214 (1983); *Commonwealth ex rel. ReDavid v. ReDavid*, 251 Pa.Super. 103, 380 A.2d 398 (1977).

equal responsibility for supporting their children and " 'must be required to discharge the obligation [of child support] in accordance with their capacity and ability.' " *Downie,* 314 Pa.Super. at 550, 461 A.2d at 294 (quoting *Conway v. Dana,* 456 Pa. 536, 540, 318 A.2d 324, 326 (1974)); *Sutliff.*

Among the considerations outside the guideline grid in the case sub judice is the father's living expenses. In this regard, the trial court correctly recognized that some of the father's living expenses were being defrayed by the father's live-in companion. *Melzer; Roberts v. Bockin,* 315 Pa.Super. 52, 461 A.2d 630 (1983); *Commonwealth ex rel. Travitzky v. Travitzky,* 230 Pa.Super. 435, 326 A.2d 883 (1974). The father argues that the trial court impermissibly attributed to him a portion of his live-in companion's income and indirectly made his live-in companion partially responsible for the support of the parties' children.

■ While " 'there is nothing in our law which requires [a] new spouse to support minor children of [a prior] marriage,' " *Melzer,* 505 Pa. at 476, 480 A.2d at 998 (citation omitted), and while, therefore impliedly, there is nothing in our law which requires a live-in companion to support minor children of a prior marriage, Pennsylvania courts have repeatedly acknowledged that to the extent that a parent's expenses are lessened by the contribution of a third party, the parent may have increased financial resources available for child support. *Id.; Roberts; Shank; McBride v. Davis,* 266 Pa.Super. 125, 403 A.2d 125 (1979); *Travitzky.*

■ In this instance, there was substantial evidence of record to show that the father and his live-in companion share many living expenses. For example, the father resides in a home purchased in the name of his live-in companion and is the guarantor of his companion's home mortgage. Accordingly, we find that in ascertaining the father's child support capacity, the trial court properly examined the contributions to the father's living expenses which were made by the father's live-in companion.

■ Having carefully reviewed the evidentiary foundation for the trial court's support order, we conclude that it is necessary to vacate said order and remand this case to the trial court for additional evidentiary proceedings so that a record of the children's actual, reasonable expenses in the shared custody setting and of the parents' complete financial resources and actual, reasonable expenses may be obtained as the basis for a support order. Jurisdiction is relinquished.