Chris Ann DOHERTY, Appellant,

v.

John F. DOHERTY, Appellee.

Superior Court of Pennsylvania.

Argued Feb. 26, 2004.

Filed Sept. 21, 2004.

---

Jeffrey Gabriel, Pittsburgh, for appellant.

Serena M. Newsom, Pittsburgh, for appellee.

BEFORE: DEL SOLE, P.J., MUSMANNO and ORIE MELVIN, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 In this appeal from an order setting child support, Mother contends the trial court erred in not applying the nurturing parent doctrine and erred in calculating her earning capacity. We affirm.[1]

¶ 2 The parties to this appeal were married in January 1996, and separated in 2002. They are the parents of two children, Jonathan, born December 15, 1997, and Krissa, born March 1, 2000. The parties initially appeared before a hearing officer in November and December 2002. The case was then referred to a Complex Hearing Officer who heard testimony on two dates in March 2003. Mother filed exceptions to the Hearing Officer's report and recommendation. Following argument, the trial court dismissed Mother's exceptions. This appeal followed.

On appeal, a trial court's child support order will not be disturbed unless there is insufficient evidence to sustain it or the court abused its discretion in fashioning the award. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence on the record, discretion is abused.

*Fee v. Fee,* 344 Pa.Super. 276, 496 A.2d 793, 796 (1985) (citations omitted). Thus, a reviewing court does not weigh the evidence or determine credibility as these are functions of the trial court. *Nationwide Ins. Enter. v. Moustakidis,* 830 A.2d 1288, 1292 (Pa.Super.2003) ("It is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgment for that of the fact-finder.") When we review the record in light of this rather stringent standard, we

---

1. The order in question set the support payments as follows: Father to pay $2,359 ($941 child support plus $833 spousal support plus $615 mortgage deviation) per month from the September 9, 2002, filing date through July 1, 2003; after July 1, 2003, Father to pay $1,699 per month ($875 child support, $350 spousal support plus $474 mortgage deviation). This $1699 is approximately 44% of Appellee's net monthly earnings of $3892.

are unable to conclude that the trial court abused its discretion as so defined.

¶ 3 Appellant argues that the trial court abused its discretion by not applying the nurturing parent doctrine which recognizes that a custodial parent who stays at home and cares for a child does, in fact, support the child. *Funk v. Funk,* 376 Pa.Super. 76, 545 A.2d 326 (1988). In determining whether to expect a nurturing parent to seek employment, the trial court must balance factors such as the age and maturity of the child, the availability and adequacy of others who might assist the custodial parent, and the adequacy of available financial resources if the parent does remain at home. *Commonwealth ex rel. Wasiolek v. Wasiolek,* 251 Pa.Super. 108, 380 A.2d 400 (1977). Moreover, the court "is not strictly bound by the nurturing parent's assertion that the best interest of the child is served by the parent's presence in the home." *Stredny v. Gray,* 353 Pa.Super. 376, 510 A.2d 359, 363 (1986).

¶ 4 Presently, both the hearing officer and the trial court properly considered and weighed the various factors. These factors, which are amply supported by evidence of record include the following: "credible and comprehensive [expert] testimony regarding Mother's employment history and current capabilities." Trial Court Opinion, 10/21/03, at 6 (quoting Master's Report); the young age of the children together with the fact that they do spend some time during the week in pre-school and that Jonathan was to start full-day kindergarten the following year; that affordable child care is available both through Father's family and at the place where the children currently attend pre-school; that Mother had worked full-time before the children were born and part-time after the children were born and was, at the time of the hearing, working part-time as a merchandiser and baby-sitting for a neighbor. The master further recognized that the parties' financial situation was not terribly strong, given the parties' expenses and Father's recent but understandable job changes. Most importantly, the hearing officer, who was in the best position to judge Mother's credibility, found her "use of the nurturing parent doctrine ... disingenuous." Master's Report at 6. This credibility determination cannot be revisited on appeal.

¶ 5 We conclude therefore that the trial court's refusal to apply the nurturing parent doctrine to this particular case was supported both by case law and the evidence presented. This conclusion was not reached as the result of partiality, prejudice, bias, or ill-will nor was the law overridden or the judgment exercised manifestly unreasonable as the master and trial court considered and weighed all of the factors necessary for application of the nurturing parent doctrine. There was thus no abuse of discretion in the trial court's decision to assess an earning capacity to Mother.[2]

¶ 6 Appellant further argues that the trial court abused its discretion in determining her earning capacity and the time from which she could conceivably obtain employment. While recognizing that the hearing officer found the vocational expert to be credible, Appellant now bases this claim entirely on a credibility challenge to the expert's testimony. We cannot reas-

---

2. The dissent places great emphasis on certain factors: that Appellee earns approximately $70,000 a year and has minimal expenses since he lives with his parents; and that the Hearing Officer gave insufficient weight to Appellant's perception that the children's best interest is served by her staying at home. It is precisely this reweighing of the evidence that an appellate court is not at liberty to do. *Nationwide,* 830 A.2d at 1292.

sess credibility on appeal. *Nationwide*, 830 A.2d at 1292.

¶ 7 Accordingly, since we find no abuse of discretion in the trial court's determination, we affirm the order.

¶ 8 Order affirmed.

¶ 9 ORIE MELVIN, J. files a dissenting opinion.

## DISSENTING OPINION BY ORIE MELVIN, J.:

¶ 1 I respectfully dissent from the majority's conclusion that the trial court did not abuse its discretion with respect to application of the nurturing-parent doctrine as recognized by this Court in *Commonwealth ex rel. Wasiolek v. Wasiolek*, 251 Pa.Super. 108, 380 A.2d 400 (1977).

¶ 2 Mother maintains that under the facts of this case the nurturing-parent doctrine is applicable, and, therefore, the trial court should have assessed her earning capacity at zero or at least no more than her acknowledged earnings of $172.00 per month. Upon careful review, I agree that the particular facts of this case warrant application of the nurturing-parent doctrine to Mother, and the trial court misapprehended this doctrine and erred in relying on the Hearing Officer's findings and recommendation as the Hearing Officer did not engage in a complete evaluation of the relevant factors attributable to this doctrine.

¶ 3 "In *Commonwealth ex rel. Wasiolek v. Wasiolek*, 251 Pa.Super. 108, 380 A.2d 400 (1977), we recognized the important child-care contributions of an unemployed nurturing parent and held that in appropriate circumstances a nurturing parent should not be expected to find employment in order to further the child's economic welfare at the expense of the child's emotional welfare." *Butler v. Butler*, 339 Pa.Super. 312, 488 A.2d 1141, 1143 (1985).

Thus, "[i]n appropriate cases, the earning capacity of a parent who chooses to stay home with young children need not be considered." *Atkinson v. Atkinson*, 420 Pa.Super. 146, 616 A.2d 22 (1992) (citing *Hesidenz v. Carbin*, 354 Pa.Super. 610, 512 A.2d 707 (1986)).

> Of course, a court is not strictly bound by the nurturing parent's assertion that the best interest of the child is served by the parent's presence in the home. It is for the court to determine the child's best interest. But the court must balance several factors before it can expect the nurturing parent to seek employment. Among those factors are the age and maturity of the child; the availability and adequacy of others who might assist the custodian-parent; the adequacy of available financial resources if the custodian-parent does remain in the home. We underscore that, while not dispositive, the custodian-parent's perception that the welfare of the child is served by having a parent at home is to be accorded significant weight in the court's calculation of its support order.

*Bender v. Bender*, 297 Pa.Super. 461, 444 A.2d 124, 126 (1982) (quoting *Wasiolek*, 380 A.2d at 403). "In addition, the trial court may consider the parents' employment history and prior practice with regard to caring for their children." *Woskob v. Woskob*, 843 A.2d 1247, 1256 (Pa.Super.2004) (citing *Frankenfield v. Feeser*, 449 Pa.Super. 47, 672 A.2d 1347 (1996)). Of course what constitutes "appropriate circumstances" will depend on the facts and must be determined on a case-by-case basis.

¶ 4 Here, after reviewing this Court's decision in *Funk v. Funk*, 376 Pa.Super. 76, 545 A.2d 326 (1988), the trial court supplied the following rationale for its decision to impute an earning capacity to Mother:

In the instant case, [Mother's] education and work experience is at least on a par with the facts presented in *Funk.* The record clearly indicates that [Mother] is an intelligent, talented person who has proven her mettle in a variety of employment settings. The earning capacity assigned to [Mother] is based upon competent credible evidence and is fully supported in the record. In addition, under the Superior Court's directive as enunciated in *Funk,* to place the burden of child support solely on [Father's] shoulders would constitute reversible error in similar circumstances.

The Court also agrees with the findings of the Master that "[Mother] does not deny the availability of child care for the children; rather, she states that she wants to stay home with them." (Report at page 6). In addition, the Master properly ordered that [Father] be required to pay for the child care in an amount equivalent to his percentage proportion of the parties' combined income. (Master's Report at Page 7).

The Hearing Officer properly followed the directive to "balance several factors" in examining the applicability of the nurturing parent doctrine. *See Stredny v. Gray,* 353 Pa.Super. 376, 510 A.2d 359, 363 (1986). The Recommendation of the Hearing Officer is well-reasoned, legally sound, and in keeping with the instructions of the Pennsylvania Supreme [sic] Court as enunciated in the case of *Funk v. Funk,* cited *supra.*

Trial Court Opinion, 10/21/03, at 9.

¶ 5 The Hearing Officer's entire discussion of the matter reads as follows:

The testimony reflects that Mother was essentially a stay-at-home mother during the marriage. However, there are significant caveats to this—Mother testified that she worked in several different capacities during the marriage and even after the children were born. She worked at DeLallo's in Robinson Mall from December of 2001 through January 2002, she has acted as an Avon and Tupperware salesperson; most significantly, Mother worked as a paralegal for a limited time period while Father was at Gillardi [sic] Cooper. This paralegal employment was on a fee dispute case and, while limited, Mother concedes that Gillardi [sic] Cooper sought further work from her and she refused same.

Mother has also done some catering in the past and, at the time of the hearing, was earning $172.00 in net monthly income from babysitting a neighbor's child and working seven hours monthly for Retail Systems Corporation as a merchandiser.

\* \* \* \*

The Hearing Officer finds that Mother's use of the nurturing parent doctrine is somewhat disingenuous. Mother has worked throughout the marriage during periods of family financial crisis. Mother works at present (and while she denies the availability of further hours with National Retail Services, the Hearing Officer presumes her response to the offer of more hours at this position would be the same—that she would decline, based on her desire to be home with the children). It seems apparent that the breakdown of the marriage and the resultant establishment of two separate households would certainly constitute a current financial crisis. Accordingly, assignment of an earning capacity to mother at this time would simply be a continuance of the status quo established during the marriage.

Hearing Officer's Report and Recommendation, 3/27/03, at 5–6.

¶ 6 Upon my review, it is clear that the trial court did not, nor did the Hearing

Officer, comprehensively review all of the requisite factors and appropriately weigh all the applicable factors before making its determination. I find the Hearing Officer's alleged balancing of the several factors is contradictory and incomplete.

¶ 7 Looking at the relevant factors in the instant case at the time of the hearing, the parties' children were ages five and three. Jonathan, the older child, was born on December 15, 1997, and Krissa, the younger, was born on March 1, 2000. Mother is the custodial parent and desires to remain at home to continue raising these young children. This admittedly was the prior practice with regard to the care of the children and has been since 1997 when Mother quit her job upon the birth of the parties' first child. Moreover, Mother made it clear to Father that before they decided to have children she did not believe in daycare and she intended to raise the children herself. Father did not dispute that this was Mother's stated intention and apparently agreed with this arrangement as he did not request that she return to work until he realized that the marriage was ending.

¶ 8 Significantly, the record is devoid of any indication that the trial court or the Hearing Officer, upon which the trial court relied, ever gave any consideration to the adequacy of available resources if the custodial parent remains at home. *See Butler* and *Bender, supra*. Regarding this factor, Father is an attorney who makes a minimum salary of $70,000.00 per year. In addition to his base salary he also receives a twenty-percent (20%) commission on client revenues that he generates above $30,000.00. Father's earnings are significant for any family and should be more than adequate to continue to allow Mother to remain at home with the parties' children until they are both in school full-time. Furthermore, it is clear that the Hearing

Officer gave little if any weight, rather than the requisite "significant weight," to "[Mother's] perception that the welfare of the child[ren] is served by having a parent at home." *Bender, supra*. While alternative caregivers are adequate and available this factor alone should not override Mother's belief that the welfare of the children is best served by having her at home. This is especially true where the children are accustomed to Mother being there to care for their daily needs, and Father's earnings can and should allow for this arrangement to continue without financial difficulty.

¶ 9 The Hearing Officer's finding that "the breakdown of the marriage and the resultant establishment of two separate households would certainly constitute a current financial crisis," is not supported by the evidence of record. Quite the contrary, the evidence reveals that Father has not established a second household but rather now resides with his parents whom he pays $400.00 per month for room, board and the use of two vehicles. Thus, Father's admitted earnings and likelihood of meeting his commission threshold even in light of his support obligations and limited personal expenses do not support the conclusion of a current financial crisis. In fact, Father's current earnings are not significantly different than that which existed throughout the marriage from the time of the birth the parties' first child until his decision to accept employment with the firm of Gilardi & Cooper. During which time Mother remained at home rearing the children with Father's acquiescence if not his blessing.

¶ 10 Furthermore, the Hearing Officer's conclusion that the "assignment of an earning capacity to Mother would simply be a continuance of the status quo established during the marriage," is contradictory to her initial finding that "[t]he testimo-

ny reflects that Mother was essentially a stay-at-home mother during the marriage." In fact, the record reflects that the only time Mother worked any significant period of time outside the home after the children's birth was when Father unilaterally reduced his income by leaving his position with Marshall Dennehey, where he was earning a minimum of $80,000.00, to take a position, albeit with better benefits, at Gilardi & Cooper at a starting salary of $40,000. It was this change of jobs that necessitated Mother's working as a paralegal for Father at his new firm to supplement the family's income. Beyond this one time paralegal assignment, which consisted of a total of sixty-five hours of work over a three week time period, Mother merely worked various part-time jobs from the home or limited seasonal work that did not interfere with her child care responsibilities. The previously assigned earning capacity of Mother was based on her actual earnings performing seven to ten hours of work per month on the weekends, when the children were in Father's care, checking on merchandise displays, and babysitting a neighbor's child after school. Considering Mother's desire to stay at home and raise the children, the fact that this was admittedly the family policy until the ending of the marriage and Father's significant earnings as an attorney and the benefits provided to him by his parents making such a continued arrangement feasible, Mother should not have been required to contribute support at least until such time that the youngest child is in school full-time.

¶ 11 Further, I find the trial court's reliance on *Funk* is misplaced. The issue raised in *Funk*, unlike the instant appeal, did not directly implicate application of the nurturing-parent doctrine. *Funk* involved a shared custody arrangement and neither party invoked application of the nurturing-parent doctrine. This Court, in *obiter dic-tum*, mentioned the nurturing-parent doctrine in relation to father's claim that the trial court erred by failing to consider his child care expenses while the children were in his custody when determining the support award. The trial court had refused to consider father's child care expenses because it found such expenses unreasonable in light of the fact that mother was unemployed and had offered to take care of the children during the time father had custody and was at work.

¶ 12 In response, this Court merely noted that it appeared that the trial court was applying a nurturing-parent exception despite the fact that the record did not reflect that the trial court used a *Wasiolek* analysis prior to refusing to allow father to claim reasonable day care expenses and suggesting that the mother remain at home to care for the children. This Court in finding that the trial court abused its discretion in this regard also pointed out that the children subject to the support order are old enough to attend elementary school. The implication being that the children were of such an age and maturity level that obviated the need for application of the doctrine. Moreover, except during the children's summer vacation, the mother would only care for the children several hours per day before the father left for work and resumed custody. The *Funk* panel, therefore, concluded that "appellant, who is also a custodial parent, wants the children to attend a respected day-care facility after school. Certainly, the trial court's discretion is not so broad as to allow the court to deny arbitrarily the custodial father's reasonable wishes regarding child care." *Funk*, 545 A.2d at 332. The instant case presents vastly different factual circumstances and application of the nurturing-parent doctrine was specifically advocated by Mother's counsel. Unlike *Funk*, we are not here concerned

with whether Mother's education and work experience provide competent evidence of an earning capacity, rather, the specific question presented is whether this is one of those "appropriate cases" where "the earning capacity of a parent who chooses to stay home with young children need not be considered." *Atkinson, supra.* If this is not such a case, then perhaps the doctrine only exists in this Commonwealth in theory. I find that the trial court's discussion of *Funk* clearly demonstrates that the trial court misapprehended the law with respect to the nurturing-parent doctrine, and thus, failed to consider the relevant "several factors" and properly apply that doctrine. Contrary to the majority's assertion in footnote 2, *supra,* I have in no way reweighed the evidence but, rather, have pointed out the lack of record support for certain of the trial court's conclusions and its failure to consider each of the requisite factors attendant to application of the nurturing-parent doctrine. Moreover, unlike the majority, I cannot conclude that a party's advocacy for application of a legal doctrine is a credibility determination that cannot be revisited on appeal. Rather, it presents the question of whether the law was overridden or the trial court exercised a manifestly unreasonable judgment. Both of which I would find occurred in this case.

¶ 13 Therefore, I would vacate the order of the trial court and remand for further proceedings consistent with this opinion to formulate a support award without attributing to Mother an earning capacity in excess of the acknowledged $172.00 per month she has been earning while caring for the children.