J-A28040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ANASTASIA BOCHKAREVA A/K/A BOCHKAREV, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| VIATCHESLAV BOCHKAREV, | |
| Appellee | No. 2924 EDA 2014 |

Appeal from the Order Entered August 28, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2009-05232 PACSES #285110953

BEFORE:  GANTMAN, P.J., PANELLA, and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 01, 2015**

Appellant, Anastasia Bochkareva, also known as Anastasia Bochkarev[1] ("Mother"), appeals from the order entered on August 28, 2014, that disposed of her motion for modification of child support.  We affirm.

Mother and Viatcheslav Bochkarev ("Father") were born in Russia, were married in Russia in 2003, and later moved to the United States.  N.T., 5/2/14, at 165; Trial Court Memorandum, 8/28/14, at 2.  Two children were born of the marriage.  Trial Court Memorandum, 8/28/14, at 2.  In 2008, Father lost his job at Morgan Stanley in the United States.  *Id*. The parties planned to return to Russia with their two children.  *Id*.  Father obtained

_____

[1] "Bochkareva" is the feminine form of the family name "Bochkarev."  N.T., 5/2/14, at 22-23.

employment at Penta Investments in Russia, and he returned to Russia in August of 2008. *Id*. While Mother had planned on returning to Russia with the children, Mother instead filed for divorce in Montgomery County in February of 2009. *Id*. Mother and Father are now divorced. *Id*. Father continues to reside in Russia, and Mother and the children continue to reside in the United States. *Id*. Father intends to remain in Russia, and Mother concedes this point. *Id*.

On September 17, 2009, Mindy A. Harris, Esquire, conference officer in support, found [F]ather, a resident of Russia, considering his background, education and experience, with a net earning capacity of $2,176 per month and [M]other with a net income, after legal deductions, of $1,841 per month. Ms. Harris['] recommendation was [Father] to pay child support for two children in the amount of $618 per month, plus $81 per month for medical insurance contribution, for a total of $699 per month. Unreimbursed medical expenses were to be paid 54% by [F]ather and 46% by [M]other. The recommendation became an order on September 21, 2009. Neither side filed exceptions from this order.

On July 10, 2012, [M]other filed a petition to modify the September 21, 2009 order based on a change of circumstances. Mindy A. Harris, Esquire, addressed the matter again and found, on April 17, 2013, [F]ather with a net income of $1,383.70 per month and [M]other with a net income of $4,720.52 per month. Ms. Harris' recommendation was an order against father of $485 per month for two children, $35.23 per month for medical insurance contribution, and $223.60 per month for child care, for a total support of $743.83 per month. Unreimbursed medical expenses were to be paid 23% by [F]ather and 77% by [M]other. The recommendation became an order on April 22, 2013. Mother filed exceptions from the support order on May 8, 2013.

Trial Court Memorandum, 8/28/14, at 1-2. Following a hearing, the trial court entered an order on August 28, 2014, which provides, in relevant part, as follows:

> AND NOW, this 28th day of August, 2014, after hearing and briefs, the following is **ORDERED:**
>
> 1. For the period of July 10, 2012 through December 31, 2012
>
>     (1) Father's net income is $1,214 net per month.
>
>     (2) Mother's net income is $3,716 net per month.
>
>     (3) Father shall pay child support as follows:
>
>         (i) $336.00 per month for 2 children;
>
>         (ii) $49.20 per month for medical insurance contribution $385.20 per month TOTAL
>
>     (4) Mother shall provide medical insurance for the children.
>
>     (5) Mother shall pay the first $250 annually for unreimbursed medical expenses incurred for each child.
>
>     (6) Unreimbursed medical expenses that exceed $250 annually for each child shall be paid 24.6% by father and 75.4% by mother.
>
> 2. For the period of January 1, 2013 through December 31, 2013
>
>     (1) Father's net income is $1,214 net per month.
>
>     (2) Mother's net income is $5,949 net per month.
>
>     (3) Father shall pay child support as follows:
>
>         (i) $279 per month for 2 children

(ii) $33.88 per month for medical insurance contribution $312.88 per month TOTAL

(4) Mother shall provide medical insurance for the children.

(5) Mother shall pay the first $250.00 annually for unreimbursed medical expenses incurred for each child.

(6) Unreimbursed medical expenses that exceed $250.00 annually for each child shall be paid 16.94% by [F]ather and 83.06% by [M]other.

3. For the period January 1, 2014 forward:

(1) Father's net income is $1,214 net per month.

(2) Mother's net income is $5,298 net per month.

(3) Father shall pay child support as follows:

(i) $291.00 per month for 2 children

(ii) $37.28 per month for medical insurance contribution $328.28 per month TOTAL

(4) Mother shall provide medical insurance for the children.

(5) Mother shall pay the first $250.00 annually for unreimbursed medical expenses incurred for each child.

(6) Unreimbursed medical expenses that exceed $250.00 annually for each child shall be paid 18.64% by [F]ather and 81.36% by [M]other.

(7) Any and all arrears are due and payable immediately and obligor shall pay $31.00 per month on arrears with each periodic payment. All terms of this order are subject to collection and/or

enforcement by contempt proceedings, credit bureau reporting, tax refund offset certification, driver's license revocation, and the freeze and seize of financial assets. These enforcement/collection mechanisms will not be initiated as long as the obligor does not owe overdue support. Failure to make each payment on time and in full will cause all arrears to become subject to immediate collection by all of the means listed above. On and after the date it is due, by operation of law, each unpaid support payment shall constitute a judgment against you, [as] well as a lien against real property.

[(]8[)]] This order is effective July 10, 2012. Arrears adjustments resulting from this effective date will be calculated by the DRO and set as of the entry date of this order.

Order, 8/28/14. This timely appeal followed.[2]

On appeal, Mother raises the following issues for this Court's consideration:

1. Whether the trial court erred by not applying an earning capacity pursuant to Pa.R.C.P. 1910.16-2(d)(4)?

2. Whether the trial court erred by not considering Father's present employment a voluntary reduction of income pursuant to Pa.R.C.P. 1910.16-2(d)(1)?

3. Whether the trial court erred by not considering the standard of living of the parties and children, as well as their unusual needs pursuant to Pa.R.C.P. 1910.16-5?

_____

[2] It does not appear as though the trial court directed Mother to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and the filing of a statement of errors complained of was not mandatory in this matter as it is not a Children's Fast Track appeal as defined in Pa.R.A.P. 102. However, the trial court, on October 20, 2014, filed a Pa.R.A.P. 1925(a) opinion incorporating the aforementioned August 28, 2014 Trial Court Memorandum.

Mother's Brief at 7.

We review an appeal from an order of child support under the following standard:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*Morgan v. Morgan*, 99 A.3d 554, 556-557 (Pa. Super. 2014) (citation and quotation marks omitted). The reviewing court does not weigh the evidence or determine credibility as these are functions of the trial court. *Doherty v. Doherty*, 859 A.2d 811, 812 (Pa. Super. 2004).

In Mother's first issue on appeal, she claims that the trial court erred by not imputing an earning capacity to Father pursuant to Pa.R.C.P. 1910.16-2(d)(4). Section 1910.16-2(d)(4) provides as follows:

**(d) Reduced or Fluctuating Income.**

* * *

(4) *Earning Capacity.* If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be

considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).

Clearly, before the trial court may impute an income equal to Father's earning capacity, the trial court must first conclude that Father "has willfully failed to obtain or maintain appropriate employment[.]" Pa.R.C.P. 1910.16-2(d)(4). Here, the trial court, after considering the record and the testimony, explained its decision as follows:

> After review of the record, the court [found] that [F]ather, who has lived for the last six years in Russia, and intends to reside in Russia, has the best employment he could obtain in Russia with TSFP (Center for Financial Support), obtaining that employment on April 1, 2013. Father's salary there is 50,000 rubles per month, with a tax rate of 13% (6,500 rubles per month), for a net of 43,500 rubles per month, which is $1,214.28 net per month U.S. currency. This $1,214.28 is not a change of circumstances from the September 21, 2009 order where [F]ather's earning capacity was $2,176 net per month, unemployment compensation (U.S. Dollars). Indeed, it is less than the prior order.

> Prior to [F]ather obtaining employment on April 1, 2013 at TSFP, [F]ather was laid off in August-September 2009 at a Russian job at Penta, when Penta closed its Moscow office. Thereafter, [F]ather obtained Russian unemployment compensation throughout 2010. During the Russian unemployment compensation, [F]ather was offered a job as a cook for a company and a job as an industrial worker, both

positions at lower salaries than at his present job. From the time Penta closed its doors, until obtaining the April 1, 2013 employment with TSFP, [F]ather was aggressive and diligent in attempting to obtain employment in Russia. Father spoke to clubs and organizations at schools where his resume was submitted, he looked for vacancies on the Internet, he was registered for online conferences on career search, he interviewed with various companies, and was proactive in networking and speaking to people.[1]

[1] The reality is that [F]ather has been unemployed for years, has obtained a job in Russia after good faith efforts for the most money as has been offered, has resided in Russia for 6 years, and there has been no change in financial circumstances for [Father] since the September 2009 order to warrant an increase in said order. Arguments to the contrary by [M]other are rejected by the court.

The court found [F]ather to be credible.[2]

[2] The court also finds [F]ather's excerpts from his brief to be accurate, as follows:

> "After his loss of employment from Penta, Father's living was financed by a combination of factors, including the fact that he lives rent free with his mother, he has borrowed money from his family, lived on credit cards, and liquidated assets. With respect to the credit cards, he did cash advances and then balance transfers from one credit card to pay back another credit card, which he did several times." ([Father's Post-Trial] Brief, [8/15/14] p. 4).

> [* * *]

> "Further, Mother's argument that the Court should give Father an earning capacity has no basis in law or fact. Mother provided no evidence to contradict that Father's income in Russia,

- 8 -

where he has lived for six (6) years, is the highest income of any job he could find or was offered, and his testimony that this was the best income he could get was, to the contrary, not contradicted." ([Father's Post-Trial] Brief, [8/15/14] p. 5).

[* * *]

"Father is employed. He lives in Russia. His income is known, his ability to live in Russia at that level of income (which as noted is higher than the other job offers he received) was explained as he is able to live with his mother (he doesn't even own a car, he occasionally used his mother's but that no longer exists as it was stolen as noted in the testimony)." ([Father's Post-Trial] Brief, [8/15/14] pp. 5-6).

On the other hand, there has been a substantial change of circumstance concerning [M]other's income. Mother's net income in the September, 2009 order was $1,841 net per month.

Mother's W-2 income for 2012 is $52,981 gross per year. Father's attempt to impute $1,000 per month additional rental income is rejected by the court based on the record. The issue of [M]other's income from January 1, 2014 going forward, according to [F]ather, would be to extend [M]other's 2013 $94,246 gross income into 2014. The court rejects this approach as [M]other's base salary is $77,000 gross per year. Her bonuses are discretionary. However, the record shows that [M]other has received $3,750 bonus thus far in 2014, so that sum will be added to [M]other's $77,000 salary for gross income going forward for [M]other of $80,750 gross per year. As to [M]other's receiving further bonuses, [F]ather can always address that issue when and if it occurs.

Lastly, [M]other admits there is no child care after June 1, 2013. However, the issue remains if [M]other has proved a child care expense from July 10, 2012 to June 1, 2013. The court finds she has not. Mother presented no testimony on this issue.

The court is left to speculate and guess about child care, concerning the amount and frequency and the very child care itself. Mother's exhibit M-A-5 shows a copy of one check for 60 and a 3 page "account detail" that does not reflect any specific child care payment whatsoever and is of no probative value regarding child care.

Trial Court Memorandum, 8/28/14, at 2-4.

The trial court found that Father's testimony was credible and that Father was employed in the best job he could obtain. Nothing in Mother's argument causes this Court to conclude there was any error or abuse of discretion in the trial court's conclusion. Therefore, because the trial court did not find that Father willfully reduced his income, there was no error in refusing to impute a greater income to Father pursuant to Pa.R.C.P. 1910.16-2(d)(4). Accordingly, Mother is entitled to no relief.

Next, mother claims that the trial court erred by not considering Father's present employment a voluntary reduction of income. The applicable Rule of Civil Procedure concerning a voluntary reduction of income is Rule 1910.16-2(d)(1), which reads as follows:

**(d) Reduced or Fluctuating Income.**

(1) *Voluntary Reduction of Income*. When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.

Pa.R.C.P. 1910.16-2(d)(1).

Again, we point out that the trial court found that Father's testimony was credible. Trial Court Memorandum, 8/28/14, at 2. Father's reduced

- 10 -

income was not voluntary. As the trial court noted, the parties decided to move to Russia, but Mother ultimately chose to remain in the United States with the children and file for divorce. *Id*. The trial court was satisfied that, while living in Russia, Father made good faith efforts to obtain suitable employment for the greatest income he could find, and there was no change in Father's financial circumstances since the September 2009 order that warrant an increase in Father's support obligation. *Id*. at 3 n.1. Similar to our analysis of Mother's first issue, we discern no error of law or abuse of discretion. The trial court's conclusion is supported by the record, and because we will not disturb the trial court's credibility determinations, we conclude that Mother is entitled to no relief.

Finally, Mother argues that the trial court erred by not considering the parties' standard of living and their unusual needs pursuant to Pa.R.C.P. 1910.16-5 in determining Father's support obligation. However, after reviewing Mother's argument on this issue, it is apparent that Mother is, in fact, challenging only the trial court's credibility determinations. Specifically, Mother asserts that Father's ability to travel belies his alleged financial status. Mother's Brief at 26-27.

Mother is baldly asking this Court to substitute its credibility determinations for that of the trial court. However, Mother has provided no authority for her argument, and this Court will not reweigh the trial court's credibility determinations. *Doherty*, 859 A.2d at 812.

For the reasons set forth above, we conclude that Mother is entitled to no relief.  Accordingly, we affirm the August 28, 2014 support order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2015