J-S36032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| K.L.S., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| D.W.C., | |
| Appellee | No. 1691 MDA 2015 |

Appeal from the Order September 1, 2015
In the Court of Common Pleas of York County
Domestic Relations at No(s): 00862-SA-2010 DRO 100292 PACSES No. 164111616

BEFORE:  MUNDY, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:                 **FILED MAY 17, 2016**

Mother appeals from the child support order entered in the Court of Common Pleas of York County.  After a careful review, we affirm.

The relevant facts and procedural history are as follows: D.C., who was born in March of 2007, is the minor child of Mother and Father. Pursuant to a stipulated order, the parties equally share legal and physical custody of D.C.  On March 26, 2015, Mother filed a petition for a modification of the stipulated order and the matter proceeded to a support conference, following which Father was ordered to pay $501.59 per month in child support plus arrears through May 8, 2015.  Father filed a timely appeal to the trial court, and on September 1, 2015, a hearing was held before the Honorable Andrea Marceca Strong.

---

*Former Justice specially assigned to the Superior Court.

At the hearing, Debra Swan Sylvester, an employee of PNC Bank ("PNC") testified that Mother established an investment account with PNC in March of 2014, and the funds deposited into the account consisted solely of those inherited by Mother upon the death of her grandfather. N.T., 9/1/15, at 7. She noted that during 2014 the account earned a dividend of $1,690.00, which Mother reinvested into the account. *Id.* at 8. She further noted that during 2014 Mother made no withdrawals from the account, but that a $601.83 management fee was paid from the account. *Id.* at 8-9.

Ms. Sylvester testified that Mother had communicated to her that for 2015 she planned to have the interest and dividends earned from the account, estimated to be $1,560.00 for the year, distributed to her. *Id.* at 10. Mother also planned to have the management fees for 2015 deducted from the account. Ms. Sylvester testified that, as of January 1, 2015, the balance in the account was $122,092.73; however, as of the close of business on August 31, 2015, the balance in the account was $106,579.56. *Id.* at 8, 11.

On cross-examination, Ms. Sylvester acknowledged the beginning balance of the account, when it was initially opened in 2014, was $116,523.00. *Id.* at 13. She further acknowledged that, since the account consists of a variety of mutual funds, the value of the account fluctuates with market conditions. *Id.* She indicated Mother opened the investment account, and there was no indication it was a condition of her inheritance.

- 2 -

*Id.* Ms. Sylvester admitted that during 2015 Mother took distributions from the account totaling $14,500.00. *Id.* at 15. Ms. Sylvester noted that Mother could freely withdraw from the account without a penalty. *Id.* at 16.

Mother testified that she has a high school diploma and is currently employed by Durham School Services as a part-time school bus driver. *Id.* at 21. She indicated that, in the past, she worked at a hospital as a nurse's aid earning $9.00 per hour, but ceased this employment when she became an emergency medical technician earning $12.64 per hour. *Id.* at 21, 32. She then worked as a receptionist in a doctor's office earning $15.00 per hour but ceased this employment. *Id.* After she gave birth to D.C., she began driving a school bus and continues to do so, working approximately 20 hours per week. *Id.* at 22. She earns approximately $800.00 per month as a school bus driver and her mortgage is $678.00 per month. *Id.* She noted she pays $3,000.00 per year in property taxes, as well as various utility and credit card bills. *Id.* at 22-23.

Mother testified the monthly mortgage and other bills exceed her monthly income, thus requiring her to "dip" into her investment account. *Id.* at 24-25. Mother agreed that in past hearings she failed to disclose the existence of the investment account. *Id.* at 29. Mother admitted that she works only part-time, but indicated she has done so for almost ten years and it suits her well. *Id.* at 22, 30. However, she also indicated that it was the only work she could "find at this moment." *Id.* at 30. She noted that since

2013 she has applied for medical jobs, veterinarian jobs, "any job," but has received "no callbacks." *Id.* at 30-31. Mother acknowledged that Father was ill and during his illness she received no child support. *Id.* at 31. During this time, she filled out approximately eight to ten employment applications. *Id.*

Mother acknowledged she is permitted to freely withdraw money from her investment account. *Id.* at 32. She also acknowledged that in March of 2014 she purchased a new house for $199,000.00; however, she only took out a $50,000.00 mortgage. *Id.* at 33. Mother explained that her parents gifted to her the majority of the money needed to purchase the house. *Id.*

Father's counsel confronted Mother with her tax return, which indicated that in 2014 Mother received a "gross foreign source income of $6,111.00." *Id.* at 35. However, Mother denied knowing anything about the money, despite the fact she signed the tax return form. *Id.* She also denied that the tax return was wrong, although she could not explain the source of the "gross foreign source income," and she denied having any other investment or trust accounts. *Id.* at 35-36.

Mother explained that, if she worked full-time, she would incur additional child care expenses and she noted that various positions are not appropriate to accommodate her shared custody arrangement. *Id.* at 39. Mother noted that, from September of 2014 until spring of 2015, she received no child support from Father due to his illness. *Id.* She took the

first withdrawal from the investment account in January of 2015 in order to "make ends meet." *Id.* at 40. Since that time, she has taken additional withdrawals from the account in order to make her mortgage payment and pay her bills. *Id.* She denied that her family gifts her money on a regular basis and she does not anticipate making future withdrawals from the investment account as long as Father continues to make child support payments. *Id.* at 41-42. She indicated that she will continue to look for a different job. *Id.* at 42.

Father testified that in June of 2014 he was diagnosed with stage 4 neck and throat cancer, resulting in him being unable to work or make his child support payments beginning in September of 2014. *Id.* at 43. Father testified that he applied for Social Security Disability Income benefits ("disability benefits") for himself and Social Security Disability Income derivative benefits ("derivative benefits") for D.W. In May of 2015, he began receiving $2223.00 in disability benefits for himself, and $1,130.00 in derivative benefits for D.W. *Id.* at 44. At this time, he started to again make child support payments to Mother in the amount of $550.00 per month. *Id.* at 44. However, he noted that, in approximately June of 2015, pursuant to a Maryland court order, he began making a child support payment in the amount of $950.00 per month for his daughter who lives in Maryland. *Id.* at 45. This amount is taken directly from his disability benefits, and thus, he now receives $1,370.00 per month for himself and

$565.00 per month in derivative benefits for D.W. *Id.* at 46. Father testified that he is unable to work and he does not anticipate being able to work in the near future. *Id.* at 47. Father testified that, prior to the instant proceedings, he was unaware that Mother has an investment account and, in fact, when he asked Mother in the past if she had any other income, she always indicated negatively. *Id.* at 47-48.

On cross-examination, Father admitted that Mother began driving a school bus in 2007, prior to the parties' separation, and the Domestic Relations Office has historically assigned Mother an earning capacity consistent with her actual income. *Id.* at 48. Father admitted that, on October 11, 2014, he received a letter informing him that he had qualified for disability benefits; however, he did not so inform Mother until May of 2015. *Id.* at 50-51. Father noted that he did not receive his first disability payment until March or April of 2015, and he then informed Mother that his disability claim had been approved. *Id.* at 52.

Father acknowledged that during his illness his parents gave him money; however, he is expected to pay back at least part of it. *Id.* at 53. He noted his parents have already asked for repayment of some of the money but he has been unable to meet their requests. *Id.* at 53. Father noted that prior to his illness he was earning $72,000.00 per year; however, from October of 2014 until May of 2015, the time during which he made no

child support payments, Father had no income from any source. *Id.* at 53-54.

At the conclusion of the hearing, the trial court directed in open court the following:

> The Court has considered the evidence presented today. We do incorporate the joint stipulation of fact into the record as well as [the exhibits].
>
> In consideration of the evidence presented today, the Court finds that no child support is warranted. We find it unreasonable for [Mother] to rely on the child support and part-time earnings. Averaging out her earnings at this time would mean that she earns approximately $5.60 per hour if she were to work full-time.
>
> She's been stating since 2013 in court records that she was seeking full-time employment. It is unrealistic that she has been unable to secure some form of [full-time] employment since that time, and therefore, based on her earning capacity, an amount she could reasonably earn given her age and education without any noted disability, the Court finds that she has the ability to make at least $20,000 if she were to earn $10 per hour. Based on her work history, she has a history of earning substantially more, however, we believe it's unreasonable to hold her to a higher earning capacity based on the circumstances.
>
> We note that the parties reached an agreement that she would engage in part-time employment while the parties were residing together. [D.C.] was not of school age. [D.C.] is now eight years old and of school age, which would permit her an opportunity to work during the day. Working 20 hours per week, particularly in light of the fact that she only has 50 percent custody, it is is unreasonable to expect [Father] to support [Mother] in this capacity.
>
> In further support of the finding that no [child] support is warranted, we do note that [Mother] does receive significant distributions through an account that she has established last year. Based on how much she has earned thus far in 2015, she is on target to earn from distributions $21,000 this year. We

note that even if she were only taking distributions of $1,500 per month, she would take distributions in the sum of $18,000 a year. Again, based on the equalization of income in addition to those distributions and the income she earns, the Court finds that her earning capacity is equal to [F]ather's.

We do find and take into consideration the derivative benefit that [D.C.] receives. Based on the support guidelines and the amendments to the support guidelines, the benefit is to be paid to the obligee to equal the incomes of the parties in consideration of the equally shared custody. We do make this decision based on the circumstances involved in this case.

We do not excuse [F]ather's support obligation for [D.C.] due to a support obligation in Maryland. That's on [Father] to address in the Maryland Courts. We make no finding or adjustment to that amount. We do take into consideration that he does have an obligation to another child, however, we do not take into consideration the amount of the obligation.

\*\*\*

The effective date of this Order is today. We find that the arrears balance will be zero. [Father] will receive no credit for any payments he made this year, and [Mother] will receive no additional arrears balance. It is to be set at zero effective today.

N.T., 9/1/15, at 55-58. Moreover, the trial court clarified that the derivative benefit will "continue to go to [Father] at this point." *Id.* at 58.

Mother filed a timely notice of appeal, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Mother contends the following:

1. Did the trial court err as a matter of law and/or abused [*sic*] its discretion in determining that Mother's withdrawals from her investment account were income to be used for purposes of calculating the parties' respective child support obligation?

2. Did the trial court err as a matter of law and/or abused [*sic*] its discretion in determining Mother's earning capacity is equivalent to that of Father's earning capacity for child

- 8 -

support purposes when Mother's withdrawals from her investment account were a result of the fact that Mother was not receiving child support for a period of time?

3. Did the trial court err as a matter of law and/or abuse its discretion in determining that the order for support docketed to the above-captioned matter should be terminated?

Mother's Brief at 1.[1]

Initially, we note that "[t]he principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." **R.K.J. v. S.P.K.**, 77 A.3d 33, 37 (Pa.Super. 2013). A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure governing actions for support or abused its discretion in applying those rules. **See Morgan v. Morgan**, 99 A.3d 554, 559 (Pa.Super. 2014).

> On appeal, a trial court's child support order will not be disturbed unless there is insufficient evidence to sustain it or the court abused its discretion in fashioning the award. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by evidence on the record, discretion is abused.

> Thus, a reviewing court does not weigh the evidence or determine credibility as these are functions of the trial court.

_____

[1] We have renumbered Mother's issues for the ease of discussion. We note these precise issues were also presented in Mother's court-ordered Pa.R.A.P. 1925(b) statement.

*Doherty v. Doherty*, 859 A.2d 811, 812 (Pa.Super. 2004) (quotation and citations omitted).

Under the Support Guidelines, the amounts calculated thereunder are presumed to be the correct amounts of support. Pa.R.C.P. 1910.16-1(d). However, this presumption can be rebutted where the fact finder determines that the award "would be unjust or inappropriate." *Id.*

In her first issue, relying upon *Humphreys v. DeRoss*, 567 Pa. 614, 790 A.2d 281 (2002), Mother contends the trial court erred in concluding that her withdrawals from her investment account, which she established after receiving an inheritance from her grandfather, constituted income for child support purposes. She further contends the trial court improperly considered the withdrawals she made from the account in deviating from the support guidelines.

"The starting point for calculation of a parent's child support obligation is a determination of each party's income available for support." *Mencer v. Ruch*, 928 A.2d 294, 297 (Pa.Super. 2007) (citation omitted). The term "income" is defined in the Domestic Relations Code, 23 Pa.C.S.A. §§ 101-8215, as follows:

> **"Income."** Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent;

- 10 -

income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S.A. § 4302 (bold in original).

In interpreting the meaning of Section 4302, our Supreme Court has held that "in order to be included in the statutory definition of income, a resource must reasonably fit within one of the categories enumerated in Section 4302." **Humphreys**, 567 Pa. at 619, 790 A.2d at 284. As it specifically relates to an inheritance, our Supreme Court has held that the corpus or principal of an inheritance is not income for purposes of calculating a monthly child support obligation. **See id.** However, as this Court has held, although the corpus of an inheritance may not be considered as income available for support, to the extent the inheritance makes more income available, it may be considered when adjusting a support obligation. **E.R.L. v. C.K.L.**, 126 A.3d 1004 (Pa.Super. 2015).

In explaining the manner in which it considered the investment account at issue for purposes of calculating Mother's income, the trial court explained as follows in its Pa.R.A.P. 1925(a) Opinion:

> Evidence was presented that [Mother] inherited [money] from her grandfather and that it was placed in an account comprised of a variety of mutual funds. . . The Court considered that [Mother] is provided with income through capital gains and

- 11 -

dividends. [Mother] has made withdrawals of the capital gains and dividends generated by the interest from the account. There is no limit on how much [Mother] may withdraw in dividends from the account, nor is there a penalty for withdrawing dividends.

[Mother] has taken approximately $14,500 in. . . distributions from the account thus far in 2015 and further dividends will be distributed for the remainder of the year. While [Mother] does withdraw some of the capital gains, she also reinvests many of the distributions back into the account. This Court followed the well-established law stated in **Humphreys v. DeRoss**[, *supra*] when considering [Mother's] income for support purposes. The Court did not consider [Mother's] inheritance as income, but instead held her to the distributions and dividends from mutual funds, which do constitute income as defined by 23 Pa.C.S.[A.] § 4302.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed 12/4/15, at 2-3 (citation omitted).

Based on the aforementioned, we conclude the trial court did not improperly treat the corpus of Mother's inheritance as income for the purpose of calculating her income for child support purposes. Rather, as the evidence revealed, Mother placed the money she inherited into an investment account consisting of mutual funds, which have been income-producing. For instance, Ms. Sylvester of PNC acknowledged the beginning balance of the investment account, when it was established in 2014, was $116,523.00; however, as of January 1, 2015, the balance had increased to $122,092.73. Simply put, we find the trial court did not abuse its discretion in this regard. *See Doherty*, *supra*.

- 12 -

In her next issue, Mother contends the trial court erred in determining that her earning capacity is equivalent to Father's earning capacity for child support purposes. In this regard, Mother asserts that she "has always been held to essentially the same earning capacity since the parties first separated and was established at the initial support conference." Mother's Brief at 7 (citation to record omitted). She further asserts the trial court erred in concluding she was "underemployed," thus assigning her an earning capacity rather than relying on her actual earnings.

"Although a person's actual earnings usually reflect h[er] earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings." *Woskob v. Woskob*, 843 A.2d 1247, 1251 (Pa.Super. 2004) (citation omitted).

> Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16–2(d)(4).

In its Pa.R.A.P. 1925(a) Opinion, the trial court relevantly indicated the following:

The Court. . .considered [Mother's] income from her current employment. [Mother] stated that she currently drives a high school bus, working about 20 hours per week and that she makes approximately $800 per month. Based on the evidence presented, the Court considered that [Mother's] monthly income from her job and dividends exceeds her monthly expenses.

This Court further considered that [Father] is not currently working because of his diagnosis of Stage 4 neck and throat cancer. We noted that [Father's] derivative benefits from his disability payments are currently being used to support [D.C.]. The Court considered that [Father] does have an obligation to another child. Further, the court does note that during the time period in which [Father] had ceased making child support payments, he was unable to work and had not yet received disability payments. Once disability payments began, he recommenced his support payments. We additionally note that though [Father] has been paying child support consistently, [Mother] continues to withdraw dividends from her investments.

This Court finds that it is unreasonable for [Mother] to rely solely on child support and a part-time job for income, especially based on her prior work experience without pursuing a position appropriate with her age, education, training, health, work experience, earnings history, and child care responsibilities. The Court also finds it unreasonable for [Mother] to rely on [Father's] disability payments alone. [Father's] current inability to work is through no fault of his own, while [Mother] has chosen not to increase her hours at work or seek a higher paying job. [Mother] further receives significant distributions from her mutual funds, while assistance [Father] receives from his parents is intended to be a loan that he is expected to repay.

***

This Court took into account the derivative benefits [D.C.] is receiving due to [Father's] disability payments. We did not relieve Father of that obligation, but based on his current income, the derivative benefits constitute his proportional share of the amount required to support [D.C.]. The Court considered all relevant and competent evidence regarding the income of both parties. Competent evidence on the record supports the outcome.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed 12/4/15, at 3-4.

Moreover, in determining Mother's earnings capacity to be at least $20,000 per year based on a full-time job of $10.00 per hour, as indicated *supra*, the trial court relevantly indicated in its order the following:

> We find it unreasonable for [Mother] to rely on the child support and part-time earnings. Averaging out her earnings at this time would mean that she earns approximately $5.60 per hour if she were to work full-time.
>
> She's been stating since 2013 in court records that she was seeking full-time employment. It is unrealistic that she has been unable to secure some form of [full-time] employment since that time, and therefore, based on her earning capacity, an amount she could reasonably earn given her age and education without any noted disability, the Court finds that she has the ability to make at least $20,000 if she were to earn $10 per hour. Based on her work history, she has a history of earning substantially more, however, we believe it's unreasonable to hold her to a higher earning capacity based on the circumstances.
>
> We note that the parties reached an agreement that she would engage in part-time employment while the parties were residing together. The child was not of school age. The child is now eight years old and of school age, which would permit her an opportunity to work during the day. Working 20 hours per week, particularly in light of the fact that she only has 50 percent custody, it is is unreasonable to expect [Father] to support [Mother] in this capacity.

N.T., 9/1/15, at 55-56.

We find no abuse of discretion in this regard. ***See Doherty***, ***supra***. To the extent Mother takes issue with the trial court's factual findings regarding her search for a full-time, better paying job, ***see*** Mother's brief at 7, we note this Court may not re-weigh the evidence or make credibility determinations. ***See Doherty***, ***supra***. The trial court's conclusions regarding

- 15 -

Mother's ability to work a full-time job, and her lack of searching for appropriate employment, are supported by the record. Furthermore, to the extent Mother contends she has always been held to essentially the same earning capacity since the parties first separated and was established at the initial support conference, the trial court explained the change in circumstances supporting an assignment of an earning capacity to Mother greater than her actual earnings. Accordingly, we find no merit to Mother's second issue.[2]

In her final issue, Mother contends the trial court erred in terminating child support for D.C.

_____

[2] Mother contends the trial court directed D.C.'s derivative benefit be paid to her, and this had the improper effect of designating Mother as the representative payee of D.C.'s derivative benefit, which is a designation that may only be made by the Social Security Administration. Mother's Brief at 8. To support her argument, Mother cites to the portion of the trial court's order wherein the trial court stated "the [derivative] benefit is to be paid to the obligee to equal the incomes of the parties[.]" *Id.*; N.T., 9/1/15, at 57. However, Mother fails to recognize that, at the conclusion of its order, the trial court clarified the derivative benefit will "continue to go to [Father] at this point." N.T., 9/1/15, at 58.

In addition, Mother contends the trial court, contrary to *Silver v. Pinskey*, 981 A.2d 284 (Pa.Super. 2009) (*en banc*), eliminated Father's support obligation and ordered him to split D.C.'s derivative benefit with Mother. *See* Mother's Brief at 7-10. Mother did not raise this precise issue in her Pa.R.A.P. 1925(b) statement, thus it is waived. In any event, this case is distinguishable from *Silver*. Here, unlike in *Silver*, the trial court attributed the derivative benefit to Father as income, and then found it was equal to Father's proportional share of the support order given the parties' equal custody arrangement.

- 16 -

In addition to the reasons set forth *supra* in support of its order, the trial court relevantly stated the following in its Pa.R.A.P. 1925(a) opinion:

> Courts may terminate a support order where there has been a material and substantial change in circumstances. The prior support order was entered in 2010, since which time [Mother] began to receive distributions [from her investment account] and [Father] was diagnosed with cancer. Both of these changes constitute a material and substantial change in circumstances from the time of the prior support order.
>
> It is well settled that each parent is required to contribute a share of the child's needs proportional to that parent's share of the combined net incomes. Pa.R.C.P. 1910.16-1. The Court considered the income of each parent and the custodial time allotted to each parent when making our determination to terminate the support order.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed 12/4/15, at 4-5 (citation omitted). We agree with the trial court's reasoning in this regard and find no abuse of discretion. *See Doherty*, *supra*.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/17/2016