J-S25001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| ERIC J. HAMADAY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LORI D. HAMADAY | : | No. 145 EDA 2023 |

Appeal from the Order Entered December 14, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2017-15205

| | | |
|---|---|---|
| LORI D. HAMADAY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC J. HAMADAY | : | |
| | : | |
| Appellant | : | No. 239 EDA 2023 |

Appeal from the Order Entered December 20, 2022
In the Court of Common Pleas of Montgomery County Domestic Relations
at No(s):  2017-DR-01582,
PACSES #: 383116674

MEMORANDUM PER CURIAM:                **FILED SEPTEMBER 12, 2023**

In these consolidated appeals,[1] Eric J. Hamaday (Father) appeals *pro se*

from the December 14, 2022 order denying his petition for contempt of

custody against Lori D. Hamaday (Mother) and the December 20, 2022 order

denying his exceptions to the hearing officer's August 11, 2022 child support

---

[1] On February 14, 2023, this Court consolidated the appeals *sua sponte* pursuant to Pa.R.A.P. 513.  Order, 2/14/23.

order. In the appeal at 145 EDA 2023, Father claims that the trial court was biased against him and erred by denying his petition for contempt without a hearing. In the appeal at 239 EDA 2023, Father claims that the trial court erred by denying his exceptions to the trial court's award of child support. We affirm.

We adopt the trial court's summary of the facts underlying this matter. *See* Trial Ct. Op., 4/14/23, at 1-7. Relevant to these appeals, Father and Mother are the parents of two children: C.H. (born in November of 2011) and G.H. (born in April of 2013) (collectively, Children). The parties married in 2009. In 2017, Father filed a complaint for custody and Mother filed a complaint for child support and divorce.[2]

In the custody matter, the trial court entered a final order granting the parties shared legal custody and shared physical custody of Children on September 13, 2019. The custody order also directed the parties to participate in family counseling, which would address, among other things, Children's involvement in extracurricular activities and/or sports. Trial Ct. Order, 9/13/19, at 6-7, R.R. at 33a-34a.[3]

On September 1, 2022, Father filed a petition for contempt alleging that Mother had violated the 2019 custody order by unilaterally enrolling Children in karate lessons without Father's consent. R.R. at 426a. Father contended

---

[2] The trial court entered a divorce decree on December 23, 2019.

[3] We may refer to the reproduced record for the parties' convenience.

that Mother violated the provisions of the custody order that awarded the parties shared legal custody of Children and required the parties to discuss Children's involvement in extracurricular activities during family counseling. *Id.* Father claimed that the parties discussed Children's participation in karate during their court-ordered family counseling, but they could not reach an agreement over sharing the cost. R.R. at 427a. Father stated that he would "not object to the children attending karate at [Mother's] expense[,]" but objected so long as he would share the cost of Children's karate lessons. *Id.*

The trial court heard argument on Father's contempt petition during a conference on November 7, 2022. Although the trial court briefly questioned Mother, neither party conducted any cross-examination. On December 14, 2022, the trial court dismissed Father's contempt petition.[4] R.R. at 398a-400a. Father filed a timely notice of appeal from that order, which this Court docketed at 145 EDA 2023.

In the support proceedings, the trial court entered a memorandum and order on July 24, 2020 directing Father to pay Mother $944.43 per month in

---

[4] Father filed a timely motion for reconsideration on December 26, 2022. The trial court did not rule on this motion. Father then filed his notice of appeal in the custody matter on January 3, 2023. The trial court's failure to address Father's motion for reconsideration does not affect our jurisdiction over this appeal. *See Interest of C.B.*, 264 A.3d 761, 769 n.16 (Pa. Super. 2021) (noting that the "filing of motion for reconsideration does not toll thirty-day appeal period, unless trial court enters order expressly granting reconsideration within thirty days of entry of appealable order" (citation omitted)), *appeal denied*, 270 A.3d 1098 (Pa. 2022).

child support.[5]  On February 16, 2021, Father filed a petition to modify support seeking a reduction in his support obligation based on changes in both parties' incomes.  Following a hearing on July 26, 2022, the support hearing officer filed a report and recommendation, which the trial court entered as an interim support order on August 11, 2022.  R.R. at 347a-52a.

The hearing officer calculated Mother's income based on her 2020 and 2021 tax returns and her 2022 paystubs.  R.R. at 347a.  The hearing officer found that Father had voluntarily decreased his income because Father had voluntarily left his prior employment with the Internal Revenue Service and was now self-employed as a tax preparer.  R.R. at 348a.  Therefore, the hearing officer used Father's prior income to calculate his support obligation. *Id.*  The interim order set Father's support obligation as $997 per month for 2021 and as $983 per month for 2022 and going forward.  R.R. at 349a.  The hearing officer found that Mother pays $178 every two weeks for Children's karate lessons, and Father's support obligation includes a share of the costs of Children's karate lessons.  R.R. at 348a-49a.

Father filed timely exceptions to the August 11, 2022 interim support order.  The trial court denied Father's exceptions on December 20, 2022.  R.R.

---

[5] In the July 24, 2020 memorandum and order, the trial court denied Father's exceptions to the March 3, 2020 interim support order and made that interim order a final support order.  Father filed a timely appeal from the July 24, 2020 order. **E.D.H. v. L.D.H.**, 1711 EDA 2020, 2021 WL 4059937 (Pa. Super. filed Sept. 7, 2021) (unpublished mem.).  This Court affirmed on September 7, 2021, and our Supreme Court denied further review on May 25, 2022. **Id.** at *7, *appeal denied sub nom.* **E.J.H. v. L.D.H.**, 279 A.3d 35 (Pa. 2022).

at 401a-06a. Father filed a timely notice of appeal from that order, which this Court docketed at 239 EDA 2023.

Father filed a court ordered Rule 1925(b) statements at each trial court docket number.[6] The trial court issued a single Rule 1925(a) opinion addressing the issues Father raised in both appeals.[7]

**Appeal at 145 EDA 2023**

In his appeal from the December 14, 2022 order denying his petition for contempt of custody, Father raises three issues, which we reorder as follows:

1. Did the trial court err as a matter of law and abuse its discretion with respect to multiple statements in the order in question (custody) and its subsequent opinion and consequently, err as a matter of law and abuse its discretion by failing to comply with the Judicial Code of Conduct . . .?

---

[6] In a children's fast track appeal, "[t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal." Pa.R.A.P. 1925(a)(2)(i). Although Father filed a late Rule 1925(b) statement in his appeal from the custody order, we decline to find waiver on this basis as the late filing does not run contrary to an order of this Court or of the trial court, and no party had raised any allegation of prejudice. *See In re K.T.E.L.*, 983 A.2d 745, 747-48 (Pa. Super. 2009).

[7] We note that the trial court suggests that Father has waived the issues he raised in his appeal from the support order because Father's Rule 1925(b) statement is not concise and it was difficult to discern the errors Father was raising in that statement. Trial Ct. Op. at 23-24. Nevertheless, the trial court addressed four claims of error. *Id.* at 25-34. Because the trial court was able to address Father's claims of error, we decline to find waiver on that basis. *See Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 319 n.3 (Pa. Super. 2015) (declining to find waiver where the appellants raised thirty-six claims of error in their Rule 1925(b) statement, but the trial court addressed the general issues raised and there was no evidence the appellants acted in bad faith by filing a length Rule 1925(b) statement).

2. Did the trial court err as a matter of law and abuse its discretion by not failing to hold a hearing prior to the issuance of a final order?

3. Did the trial court err as a matter of law and abuse its discretion by dismissing Father's petition for contempt?

Father's Brief at 7-8 (formatting altered).

Violations of the Code of Judicial Conduct

In his first issue, Father argues that the trial court violated several Rules of the Code of Judicial Conduct, specifically Rules 1.3 (avoiding abuse of the Prestige of Judicial Office); 2.2, (Impartiality and Fairness); 2.3 (Bias, Prejudice, and Harassment), and 2.5 (Competence, Diligence, and Cooperation). *Id.* at 23-34.

Our Supreme Court has explained that it has the "exclusive right to supervise the conduct of all courts and officers of the judicial branch of government pursuant to Article V, Section 10(c) of our Constitution[.]" *Reilly v. SEPTA*, 489 A.2d 1291, 1298 (Pa. 1985), *overruled on other grounds by Drake v. Pa. Nat. Mut. Cas. Ins. Co.*, 601 A.2d 797 (Pa. 1992); *see also Commonwealth v. Kearney*, 92 A.3d 51, 62 (Pa. Super. 2014) (explaining that "enforcement of the Code of Judicial Conduct is beyond the jurisdiction of this Court" (citing *Reilly*, 489 A.2d at 1298)).

Further, our Supreme Court has stated:

Perceived violations of either [the Code of Judicial Conduct or the Code of Professional Conduct, which governs the conduct of attorneys] do not permit the trial courts or the intermediate appellate courts to alter the rules of law, evidentiary rules, presumptions or burdens of proof. More importantly, violations of

- 6 -

those Codes are not a proper subject for consideration of the lower courts to impose punishment for attorney or judicial misconduct.

*Reilly*, 489 A.2d at 1299.

Therefore, this Court lacks jurisdiction to hear any claims that the trial court violated the Code of Judicial Conduct. *See id.* at 1298-99; *see also Kearney*, 92 A.3d at 62. To the extent that Father argues that the trial court was biased in favor of Mother and against Father, we may consider that as part of our abuse of discretion analysis. *See Gross v. Mintz*, 284 A.3d 479, 489 (Pa. Super. 2022) (explaining that an abuse of discretion occurs if the trial court "reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record" (citation omitted)).

Father's Contempt Petition

Father's second and third issues are related, therefore, we will discuss them together. Father argues that the trial court erred by denying his petition for contempt without first holding a hearing. Father's Brief at 49-52. Father contends that the November 7, 2022 proceeding was not a hearing because neither party had the opportunity to submit evidence or to cross-examine the other party's witnesses. *Id.* at 50-51 (citing 2 Pa.C.S. § 505). Additionally, Father claims that the trial court erred in relying on *J.R. v. L.T.*, 1394 WDA 2016, 2017 WL 4861627 (Pa. Super. filed Oct. 26, 2017) (unpublished mem.),[8] to support its decision not to hold a hearing. *Id.* at 51-52. Father

_____

[8] We note that Father has instead cited *J.R. v. L.T.*, 60 WDA 2017, 2017 WL 3701178 (Pa. Super. filed Aug. 28, 2017) (unpublished mem.). *Compare*
*(Footnote Continued Next Page)*

contends that the facts of *J.R.* and the instant case are distinguishable, including that the petitioner in *J.R.* did not contest the mother's authority to unilaterally enroll the child in summer camp. *Id.* at 51. Father concludes that the trial court erred by failing to hold a hearing on his contempt petition.

Additionally, Father argues that the trial court erred by failing to hold Mother in contempt of the custody order. *Id.* at 26-28, 42-49. Specifically, Father contends that because the parties have shared legal custody, Mother violated the custody order by unilaterally signing Children up for karate lessons without Father's consent. *Id.* at 45-47. Father asserts that enrolling Children in the karate school "should be considered a major, significant decision that both parents must agree to." *Id.* at 51; *see also id.* at 26-27 (Father claims that the karate school is an education institution because it charges "tuition"); *id.* at 29 (arguing that the trial court's conclusion that "enrollment of children in an extra-curricular activity is not commonly characterized as a 'major decision' requiring Court approval" is "absurd" because Mother signed a three-year contract and any monetary decision regarding the children to which both parents are expected contribute must be considered a "major decision"). Father also asserts that Mother violated the custody order because she did not discuss enrolling children in karate lessons during the parties' court-ordered co-parenting counseling sessions. *Id.* at 47.

_____

Father's Brief at 51 **with** Trial Ct. Op. at 16 n.35. These appeals involved the same parties, but the case cited by the trial court relates to the necessity of holding a hearing before dismissing a petition for contempt. **See J.R.**, 2017 WL 4861627, at *4-5.

Father concludes that the trial court erred by failing to hold Mother in contempt of the custody order.

Initially, before addressing the merits of this issue, we must determine whether Father has adequately developed his claim for review. This Court may raise this issue of waiver *sua sponte*. **See Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa. Super. 2007). "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020) (citation omitted).

This Court has stated:

> While this court is willing to liberally construe materials filed by a *pro se* litigant, we note that appellant is not entitled to any particular advantage because he lacks legal training. As our Supreme Court has explained, any layperson choosing to represent himself in a legal proceeding must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing.

**Branch Banking and Trust v. Gesiorski**, 904 A.2d 939, 942 (Pa. Super. 2006) (citation omitted and formatting altered).

"It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority." **In re M.Z.T.M.W.**, 163 A.3d 462, 465 (Pa. Super. 2017) (citations omitted); **see also** Pa.R.A.P. 2119(a), (c) (providing that the argument section of an appellate brief shall contain discussion of issues raised therein and citation to pertinent legal authorities and references

to the record). "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *M.Z.T.M.W.*, 163 A.3d at 465-66 (citation omitted and formatting altered). Even constitutional claims can be waived if an appellant does not properly develop them in his or her appellate brief "in a fashion that would enable [appellate] review." *K.N.B. v. M.D.*, 259 A.3d 341, 352 n.15 (Pa. 2021) (citations omitted). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived." *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) (citation omitted).

Here, Father has cited 2 Pa.C.S. § 505 in support of his claim that the trial court erred by failing to hold a hearing on his petition for contempt. Section 505 governs hearings before Commonwealth agencies and does not apply to proceedings before trial courts. 2 Pa.C.S. §§ 501, 505. Additionally, although Father contends that the facts of *J.R.* are distinguishable from this case, Father has not cited any legal authority to support his argument that the trial court must hold a hearing before dismissing a petition for contempt.

Lastly, Father has not cited any legal authority regarding shared legal custody and decisions regarding extracurricular activities in support of his claim that Mother violated the custody order by enrolling Children in karate lessons without Father's agreement. Instead, Father baldly asserts that Children's karate lessons are a major educational decision on which both

- 10 -

parties must agree because the parties have shared legal custody and they must pay "tuition" for those lessons. Therefore, we conclude that Father has waived his claims that the trial court erred by denying Father's petition for contempt without a hearing. *See* **K.N.B.**, 259 A.3d at 352; **M.Z.T.M.W.**, 163 A.3d at 465-66.

**Appeal at 239 EDA 2023**

In his appeal from the December 20, 2022 support order, Father raises seven issues, which we reorder as follows:

1. Did the trial court err as a matter of law and abuse its discretion when it imputed an earning capacity on Father, not using his actual earnings for purposes of calculating child support?

2. Did the trial court err as a matter of law and abuse its discretion in failing to apply appropriate expenses to Father's imputed earning capacity?

3. Did the trial court err as a matter of law and abuse its discretion in failing to impute to [Mother] an earning capacity when the evidence showed that she does not report all her tips and has fluctuating income while working as much or as little as she chooses?

4. Did the trial court err as a matter of law and abuse its discretion by ordering Father to pay two-thirds of the children's karate school where he never consented, and where the expense was not reasonable for Father given his earnings?

5. Did the trial court err as a matter of law and abuse its discretion when it failed to order Mother to reimburse Father for her appropriate share of the school expenses he paid for the children?

6. Did the trial court err as a matter of law and abuse its discretion in failing to make the effective date of the order retroactive to when Mother's income increased when compared to the prior order?

7. Did the trial court rule in an unconstitutional manner, conflicting with Article I, Section I of this Commonwealth's Constitution?

Father's Brief at 8-10 (formatting altered).[9]

In reviewing Father's appeal of the support order, our standard of review is as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

> We further note that an award of support, once in effect, may be modified via petition at any time, provided that the petitioning party demonstrates a material and substantial change in their circumstances warranting a modification. *See* 23 Pa.C.S. § 4352(a); *see also* Pa.R.C.P. 1910.19. The burden of

---

[9] Father also argues that the trial court violated the Code of Judicial Conduct with respect to his support case. Father's Brief at 34-41. However, in his statement of questions, Father only asserts that the trial court violated the Code of Judicial Conduct with respect to the **custody** order. *Id.* at 7. Pa.R.A.P. 2116 provides that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). Therefore, we conclude that Father has waived his claim that the trial court violated the Code of Judicial Conduct in the support case. *See id.*

Even if not waived, for the reasons explained above, this Court lacks jurisdiction to enforce the Code of Judicial Conduct. *See Reilly*, 489 A.2d at 1298-99; *Kearney*, 92 A.3d at 62. To the extent that Father argues that the trial court was biased in favor of Mother and against Father, we may consider that as part of our abuse of discretion analysis. *See Summers v. Summers*, 35 A.3d 786, 788 (Pa. Super. 2012).

- 12 -

demonstrating a "material and substantial change" rests with the moving party, and the determination of whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion.

*Summers v. Summers*, 35 A.3d 786, 788-89 (Pa. Super. 2012) (some citations omitted and formatting altered).

The "credibility to be assigned the parties' testimony and supporting exhibits lies initially with the hearing officer and the trial court." *Sirio v. Sirio*, 951 A.2d 1188, 1195 (Pa. Super. 2008) (citation omitted). This Court has explained that

> [the] finding [of a hearing officer] is only advisory and not in any way binding on the trial court. Rather, it is the sole province and the responsibility of the [trial] court to set an award of support and even if the evidence before the support hearing officer is adequate to support [his or] her recommendation, the trial court need not adopt it.

*Ewing v. Ewing*, 843 A.2d 1282, 1286 (Pa. Super. 2004) (citations omitted and formatting altered); *see also Sirio*, 951 A.2d at 1196 ("the trial court is obligated to conduct a complete and independent review of the evidence when ruling on exceptions" (citation omitted)). Further, this Court, as "a reviewing court does not weigh the evidence or determine credibility as these are functions of the trial court." *Doherty v. Doherty*, 859 A.2d 811, 812 (Pa. Super. 2004) (citation omitted).

<u>Calculation of Father's Earning Capacity</u>

Father's first and second issues in his appeal from the support order are related, therefore we will discuss them together. Father argues that the trial

court erred in determining his support obligation based on an assessment of his earning capacity rather than his actual earnings. Father's Brief at 62-74. Father claims that he was entitled to a downward modification of support based on a change in his income because he did not change employment with for the purpose of avoiding his support obligation and he made efforts to mitigate the loss of his income. *Id.* at 70-71. Father asserts that he expected to earn nearly the same amount of money as a self-employed tax-preparer as he did in his former position with the IRS. *Id.* at 63. Father contends that the trial court failed to consider that when "circumstances beyond [Father's] control" affected his earnings as a tax preparer, he took on additional tax preparation work from another source. *Id.* at 64, 66-70. Father concludes that the trial court should have used his actual earnings and not an earning capacity based on his prior salary to calculate his support obligation.

Additionally, Father argues that the trial court erred by failing to adjust his earning capacity downward to account for certain expenses he would have incurred if he remained in his old occupation. *Id.* at 74-77 (citing Pa.R.C.P. 1910.16-2(d)(4)(i)(D)). Specifically, Father asserts that if remained employed at the IRS full-time, he would have incurred costs for insurance, childcare, and his court-ordered counseling in the amount of $975 per month. *Id.* at 75 (citing Father's Br. in Supp. of Exceptions, 10/7/22, at 9, R.R. at 361a). Father contends that if this Court affirms the trial court's decision to base his support obligation on his earning capacity rather than his actual

earnings, his earning capacity must be adjusted to reflect these costs. *Id.* at 77.

It is well-established that

a person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his [or her] earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his [or her] age, health, mental and physical condition, training, and earnings history.

*Mencer v. Ruch*, 928 A.2d 294, 299 (Pa. Super. 2007) (citation omitted).

Additionally, this Court has held:

To modify a support obligation based upon the reduced income, a petitioner must first establish that the voluntary change in employment which resulted in a reduction of income was not made for the purpose of avoiding a child support obligation and secondly, that a reduction in support is warranted based on [the] petitioner's efforts to mitigate any income loss.

Effectively, [the party] must present evidence as to why he or she voluntarily left the prior employment and also as to why the acceptance of a lower paying job was necessary. Where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity. . . .

*Ney v. Ney*, 917 A.2d 863, 866 (Pa. Super. 2007) (citations omitted and formatting altered); *see also* Pa.R.C.P. 1910.16-2(d)(1)(ii) (stating that "[t]he trier-of-fact shall not downwardly adjust a party's net income if the trier-of-fact finds that . . . the party voluntarily assumed a lower paying job, quit a job, left employment, changed occupations, changed employment

- 15 -

status to pursue an education, or employment is terminated due to willful misconduct").

Pa.R.C.P. 1910.16-2 further provides that "[w]hen a party willfully fails to obtain or maintain appropriate employment, the trier-of-fact may impute to the party an income equal to the party's earning capacity." Pa.R.C.P. 1910.16-2(d)(4)(i). Also, "[w]hen the trier-of-fact imputes an earning capacity to a party who would incur childcare expenses if the party were employed, the trier-of-fact shall consider reasonable childcare responsibilities and expenses." Pa.R.C.P. 1910.16-2(d)(4)(i)(D).

In her report and recommendation, the hearing officer made the following findings of fact:

> Father is currently self-employed as a tax preparer. Father is not an accountant.
>
> In 2019, after 18 years with the Internal Revenue Service, Father resigned and went to work for himself. Father cites the lack of advancement opportunities, dissatisfaction with his co-workers, and the opportunity to be self-employed.
>
> Father felt it was better to work fewer hours during his custodial time.
>
> *   *   *
>
> Father relies on the custody evaluation dated January 21, 2019 which states (per Father) that the children would benefit if Father had a flexible schedule. Father could not direct the hearing officer to the specific page of the report where this is stated. Additionally, Father argues if he is held to his prior earnings, there should continue to be a reduction for health insurance costs, even though he is providing insurance at no cost. These arguments have no merit.

> Father voluntarily left his prior employment to pursue self-employment and voluntarily decreased his income. Father is held to his prior earnings of $3,997.00 net per month.
>
> Per Rule 1910.16-2(d), the trier of fact shall not downwardly adjust a party's net income if the party voluntarily quit a job, left employment, or changed employment status.
>
> Father may pursue self-employment but he has the burden to maintain his prior income level. If Father's tax preparation season has ended, Father can/could look for other work to supplement his income.

R.R. at 348a.

> Further, the trial court explained:
>
> Here, Father worked for the IRS for 18 years before leaving to start his own business. He cited several reasons why he left his position at the IRS revolving around his dissatisfaction with the position. Father also specifically stated that he left the position in order to spend more time with his children. In support of this proposition, he cites the January 21, 2019 custody evaluation by Dr. Gerald Cooke [(the evaluator)] from the parties' custody case.
>
> The evaluator made mention in the report that Father should maintain a flexible schedule to spend more time with his children. Father claims that he took this as a suggestion by the evaluator to quit his job at the IRS and start his own business in order to have more time to spend with his children. However, upon review of the evaluation, this mention of Father's work schedule was in no way meant to be a suggestion that Father should quit his job. It was simply meant as a suggestion that the evaluator suggested Father work more on his non-custodial days and less on his custodial days (particularly during the busy tax season) so he can make more of the time he has with his children. . . .
>
> The [hearing] officer stated that Father has a continuing obligation to maintain a similar income to what was originally designated and, due to this, did not downwardly adjust Father's income pursuant to Rule [1910.16-2(d)]. It also does not go unnoticed that Father changed employment voluntarily during the exact same time as all the support litigation was transpiring.

When reviewing an award of support, a [hearing officer's] report and recommendation, although only advisory, is to be given the fullest weight and consideration. The hearing officers' reports are made with the benefit of having heard and seen witnesses and are entitled to great consideration, and should not be lightly disregarded.

The undersigned is satisfied that the [hearing] officer properly carried out her duty to determine whether assigning Father an earning capacity was appropriate. Therefore, it was not an error to uphold her assignment of Father's earning capacity.

Trial Ct. Op. at 27-29 (footnotes omitted and some formatting altered).

Based on our review of the record, we conclude that the trial court did not abuse its discretion by dismissing Father's exceptions related to his earning capacity. *See Summers*, 35 A.3d at 788. To the extent Father challenges how the hearing officer and the trial court weighed the evidence presented at the support hearing, this Court will not reweigh the evidence or substitute its judgment for that of the fact-finder on appeal. *See Sirio*, 951 A.2d at 1195; *Doherty*, 859 A.2d at 812. The record supports the trial court's conclusion that Father voluntarily decreased his income; therefore, we discern no abuse of discretion in imputing to Father an earning capacity equal to his prior salary when calculating his support obligation. *See Ney*, 917 A.2d at 866; Pa.R.C.P. 1910.16-2(d)(1)(ii), (d)(4)(i).

As for Father's claim that the trial court failed to consider his reasonable childcare expenses in calculating his earning capacity, we conclude that Father has waived this claim because he failed to support his argument with relevant references to the record. *See* Pa.R.A.P. 2119(c); *see also M.Z.T.M.W.*, 163 A.3d at 465-66. The only source for the adjustment of $975 in monthly

childcare costs claimed by Father are the allegations in his appellate brief as well as a brief that he previously filed with the trial court. However, statements in briefs do not constitute evidence. *See, e.g.*, *Lin v. Bd. of Revision of Taxes of City of Philadelphia*, 137 A.3d 637, 645-46 (Pa. Cmwlth. 2016) (stating that "it is axiomatic that statements in briefs or legal memoranda do not constitute evidence of record upon which decisions can be based" (citations omitted));[10] *Commonwealth v. Evans*, 473 A.2d 606, 609 (Pa. Super. 1984) (holding an averment of fact in a brief filed with the trial court could not substitute for evidence). Because this Court will not "scour the record to find evidence to support an argument[,]" we find that Father has waived his claim that the trial court improperly calculated his earning capacity. *See Milby*, 189 A.3d at 1079; *see also* Pa.R.A.P. 2119(c); *M.Z.T.M.W.*, 163 A.3d at 465-66.

Calculation of Mother's Earning Capacity

In his third issue, Father argues the trial court erred by not imputing an earning capacity to Mother greater than the income documented in Mother's tax returns and paystubs. Father's Brief at 81-87, 89-90. Father claims that the trial court failed to consider: (1) Mother can work for more hours per week than she does; (2) Mother does not report all of the tips she receives as a

---

[10] Although decisions of the Commonwealth Court are not binding on this Court, they may provide persuasive authority. *See Maryland Cas. Co. v. Odyssey Contracting Corp.*, 894 A.2d 750, 756 n.2 (Pa. Super. 2006).

hairdresser on her tax returns; and (3) Mother received disability payments in 2021 while recovering from surgery. *Id.* at 81-87.

In her report and recommendation, the hearing officer made the following findings of fact:

> Mother's 2021 tax return shows gross wages of $15,593.00 and she received a tax refund of $6,620.00. Mother had hand surgery in 2021 and did not work a full year. Mother essentially paid no federal taxes in 2021.
>
> *        *        *
>
> Father believes Mother is underemployed/under reporting her income and requests she be held to an earning capacity of $2,932.00 per month net, even though it does not appear Mother has ever earned this amount of income.

R.R. at 347a.

> Further, the trial court explained:
>
> At the support hearing on July 26, 2022, Father asserted that Mother should be held to an earning capacity of $2,932 per month. This is due to the fact that he believes Mother is underemployed and otherwise not reporting the full amount of her income on her taxes. However, the [hearing] officer indicated in her report that it appeared that Mother has never earned that level of income.
>
> The [hearing] officer once again thoroughly addressed her determination of Mother's income. . . .
>
> Ultimately, the [hearing] officer calculated Mother's income as follows: $1,813 per month for 2021 and $2,258 per month in 2022. Notably, Mother most recent income finding in 2022 was an increase of Mother's income findings from the prior March 3, 2020 Order which was $1,891.08 per month.
>
> *        *        *
>
> The undersigned is satisfied that the [hearing] officer heard the testimony and analyzed the evidence presented to her and, as a result, came to well-reasoned conclusion as to Mother's income

- 20 -

findings. Father's numerous arguments that the hearing officer erred in calculating Mother's income is without merit.

Trial Ct. Op. at 30-31 (some formatting altered).

Based on our review of the record, we conclude that the trial court did not abuse its discretion by dismissing Father's exceptions related to Mother's earning capacity. *See Summers*, 35 A.3d at 788. Father again challenges how the hearing officer and the trial court weighed the evidence presented at the support hearing, and this Court will not reweigh the evidence or substitute its judgment for that of the fact-finder on appeal. *See Sirio*, 951 A.2d at 1195; *Doherty*, 859 A.2d at 812.[11] For these reasons Father is not entitled to relief on this issue.

### Ordering Father to Pay for Children's Karate Lessons

In his fourth issue, Father argues the trial court erred in ordering him to pay a share of the costs of Children's karate lessons as part of his child support obligation. Father's Brief at 52-57. Specifically, Father contends that the trial court erred by ordering that Father to repay Mother two-thirds the costs of Children's karate lessons where Father did not consent to enroll them in those classes and the custody order does not direct Children to attend those lessons.

---

[11] Additionally, while Father cites to Mother's testimony that she received disability benefits of at least $1,700 in 2021, Father has not cited any record evidence indicating that these benefits were omitted from the trial court's calculation of Mother's 2021 income using her tax returns. *See Milby*, 189 A.3d at 1079 (explaining that this Court will not "scour the record to find evidence to support an argument" and instead deem the issue to be waived (citation omitted)). Therefore, Father's claim regarding Mother's disability benefits is waived. *See M.Z.T.M.W.*, 163 A.3d at 465-66.

*Id.* at 53.  Father acknowledges that pursuant to Pa.R.C.P. 1910.16-6(d)(2), a support order can apportion additional expenses for Children's extracurricular activities among the parties if those expenses are reasonable under the parties' circumstances.  *Id.* at 53-54.  However, Father contends that Rule 1910.16-6 must be read in conjunction with the current custody order, which Father asserts requires that the parties discuss Children's participation in extracurricular activities during co-parenting counsel and both parties agree to enroll Children in activities.  *Id.* at 54-55.  Therefore, Father concludes that the trial court erred in denying his exceptions to the interim support order directing Father to reimburse Mother for Children's karate lessons.[12]

Father has not cited legal authority to support his claim that a support obligation for the costs of extracurricular activities under Pa.R.C.P. 1910.16-6(d)(2) must be interpreted in conjunction with the existing custody order.  Further, Father's support argument relies on his interpretation that the 2019 custody order requires that both parties must agree to enroll Children in extracurricular activities.  As discussed above, Father waived his claim that Mother was in contempt of the custody order because he failed to support it with citation to and discussion of legal authorities regarding shared legal

---

[12] Father also argues that ordering him to pay for Children's karate lessons is not reasonable under the circumstances because the amount is beyond what he can afford based on his current income.  Father's Brief at 55-56.  As stated above, we discern no abuse of discretion in the trial court's conclusion that Father voluntarily decreased his income and imputing to Father an earning capacity equal to his prior salary.

custody and decisions regarding extracurricular activities. Therefore, Father's claim that the trial court erred by ordering him to contribute to the costs of Children's karate lessons is waived and no relief is due. **See M.Z.T.M.W.**, 163 A.3d at 465-66.

Reimbursement for Educational Expenses and Effective Date of Order

Father's fifth and sixth issues relate to his claims that the trial court erred by imputing an earning capacity to him based on his prior salary and failing to impute an earning capacity to Mother greater than her documented income. Therefore, we will discuss these issues together. In his fifth issue, Father argues the trial court erred by ordering Mother to reimburse Father $160 for Children's educational expenses. Father's Brief at 88-89. Father argues that the trial court erred by using the incorrect total amount for Children's educational expenses in its support order. **Id.** at 88. Father further contends that the trial court erred in awarding Father $160 in reimbursement because the amount of reimbursement should be calculated using what Father claims to be Mother's earning capacity and Father's actual income. **Id.**

In his sixth issue, Father argues that the trial court erred by not making the support order retroactive to January 1, 2019 with respect to Mother's income. **Id.** at 77-81. Father contends that he is entitled to an order that is retroactive to a date prior to the date on which he filed his petition to modify because Mother misrepresented her earnings by not reporting all the tips she receives on her paystubs and tax returns and Mother failed to notify the domestic relations section of her increased income in 2020. **Id.** at 78-80.

For the reasons stated above, we concluded that Father's claims regarding both his and Mother's earning capacities are meritless or waived, therefore, we conclude that Father's related claims that Mother should pay a greater share of Children's educational expenses and the support order should be retroactive to January 1, 2019 are meritless and no relief is due.

Constitutional Violations

In his final issue, Father essentially argues that the trial court's support order improperly assigned Father an earning capacity based on his previous occupation and improperly adjusted Father's earning capacity for reasonable childcare expenses by requiring Father to pay for two-thirds of Children's karate school fees in violation of Father's right to the pursuit of happiness under Article I, Section I of the Pennsylvania Constitution. Father's Brief at 59-61. Father also contends that the requirement that he pay for Children's karate lessons violates Article I, Section II of the Pennsylvania Constitution which provides that governments are instituted for the peace, safety, and happiness of the people. *Id.* at 56-57.

Father has not cited legal authority to support his claim that essentially, assigning an earning capacity based on his previous occupation for which the trial court upheld the support hearing officer's finding that Father voluntarily reduced his income that impacted his obligation to pay for a portion of Children's extracurricular activities violates his constitutional rights. Therefore, we conclude that Father has waived his constitutional claim regarding the support order and no relief is due. *See* Trial Court's Op. at 25-

29; *see also K.N.B.*, 259 A.3d at 352 n.15; *M.Z.T.M.W.*, 163 A.3d at 465-66.

## Conclusion

Accordingly, we conclude that Father's issues are waived, meritless, and, or relate to issues that are outside this Court's jurisdiction as discussed herein. For these reasons, we affirm the trial court's orders.

Orders affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/2023